RALF C. PATTON, PETITIONER-PROSECUTOR, v. AMERI-
CAN OIL COMPANY, DEFENDANT-RESPONDENT.

Argued November 16, 1935—Decided November 26, 1935.

Before Justice PERSKIE, at chambers, pursuant to statute.

For the prosecutor, *Samuel P. Orlando.*

For the respondent, *Cecil W. Rotzell.*

PERSKIE, J.   This writ brings up for review a judgment of
the Common Pleas Court of Burlington county which affirmed
the judgment of the workmen's compensation bureau dismiss-
ing the employe's petition.

Although respondent did not admit that the accident arose
out of and in the course of the employment, nevertheless, it
did not actually contest it.   In fact respondent frankly con-
ceded, and correctly so, that under the proofs it was open to
the deputy commissioner to find, as he did, that the injuries
did arise out of and in the course of the employment.   That
question is not in this case.   The real question requiring
decision is whether the alleged intoxication of the employe
was the "natural and proximate cause" of the injuries which
he sustained?

The burden of that proof is upon the employer.   Paragraph
7, section II, Elective Compensation, chapter 95, *Pamph. L.*
1911.   *Cum.   Supp.   Comp.   Stat.* 1911-1924, *p.* 3870, §
**236-7.

It is strongly urged that since the compensation bureau and the Common Pleas Court so found, that this court should not disturb that finding. It is, of course, well settled that we do not lightly disturb the result reached by two independent tribunals; but it is equally well settled that we are not foreclosed by such a finding. *Lazzio* v. *Primo Silk Co.,* 114 *N. J. L.* 450; 177 *Atl. Rep.* 25; *affirmed,* 115 *N. J. L.* 506; 180 *Atl. Rep.* 881. The function of this court on *certiorari,* in these cases, "either by reason of the general language of the *Certiorari* act (section 11), or the language of the Compensation act, or both, is to review questions of fact as well as of law." *Gianfrancisco* v. *Public Service Co-ordinated Transport,* 11 *N. J. Mis. R.* 219, 222; 165 *Atl. Rep.* 419.

But my difficulty here is more deeply rooted. It is that the determination of facts by the deputy commissioner, for the bureau, does not set forth the finding which he was required to make in order to warrant the dismissal of the petition, namely, that the intoxication of the employe was the "natural and proximate cause" of his injuries. The Common Pleas Court made no specific finding of fact; it merely affirmed the finding and dismissal by the bureau. That, apparently is sufficient, but it did not cure the failure of the bureau to make the required finding. *Dreyfus* v. *Lutz Co.,* 6 *N. J. Mis. R.* 608; 142 *Atl. Rep.* 433; *affirmed,* 106 *N. J. L.* 566; 146 *Atl. Rep.* 913. (Compare *Gianfrancisco* v. *Public Service Co-ordinated Transport, supra; Fontaine* v. *United Engineers and Contractors, Inc.,* 12 *N. J. Mis. R.* 220; 170 *Atl. Rep.* 856.)

I could perhaps with propriety stop at this point. But a discussion of the proofs will, I think, clearly indicate that the finding of the bureau does not determine the issue between the parties. Proper proofs, circumstantial or presumptive, based on deducible inferences, must alone form the basis of the employe's right to, or denial of, compensation. What are these proofs?

The American Oil Company employed Ralf C. Patton as its general sales representative in Camden and part of Burlington county. He used an automobile and quite frequently

worked at night. The night of the accident, February 17th, 1933, was dark, cold and the ground was covered with about three inches of snow. Patton set out in his car, among other reasons, to inspect a pit to determine the feasibility of installing a gasoline tank there. This pit is located near Rancocas Park, in the vicinity of Masonville, Burlington county, New Jersey. At or near the point of the pit the tracks of the Pennsylvania railroad are adjacent to and south of the main highway.

In order to reach the pit it is necessary to cross these tracks. If prosecutor's version of the accident is correct, he reached the pit, and while returning to the main highway and recrossing the tracks was hit by a locomotive attached to a train of the Pennsylvania Railroad Company. On the other hand, if respondent's version of the accident is correct, prosecutor never crossed both tracks at all; he made a left-hand turn from the main highway to reach the pit and before he completely crossed both rails made another left turn so that he completed a U shape turn and continued on the track bed, straddling the southerly rail, for a distance of about one hundred and fifty feet, when he was struck by the locomotive. The accident happened about ten-thirty of the night in question.

Prosecutor suffered a fracture of his right leg, at the hip, and a dislocation. He has had two operations at the University of Pennsylvania Hospital, and was confined there eight weeks after the first operation and four weeks after the second. He had a third operation at the Jewish Hospital of Philadelphia, and was confined there for twelve weeks. And apparently still has to undergo another operation.

Patton received compensation for the period from February 17th, 1933, to August 4th, 1933, when further payments bureau on September 23d, 1934, and the respondent answered and said, among other things, that it was not liable because the accident did not arise out of and in the course of the employment. Thereafter, on April 11th, 1935 (I rather doubt the accuracy of the date, but it is so stated in the record), respondent filed an amended answer in which it stopped. He filed a claim with the workmen's compensation

claimed that the intoxication of the prosecutor was the proximate cause of his injuries. Hearings were held on December 3d and 17th, 1934. It appears, on prosecutor's admission, that while at Haddonfield, New Jersey, about eight o'clock of the night in question, he took a drink of whisky out of a flask tendered by a friend. He then drove to Moorestown, New Jersey; from Moorestown he drove to Mount Holly, New Jersey, and from there to the scene of the accident. In other words he drove the car the greater part of the time after he took this one drink at eight P. M., until ten-thirty P. M., without mishap.

When prosecutor was picked up at the scene of the accident it was first thought that he was dead and the coroner was notified. Prosecutor says that he was unconscious and remembers nothing of what happened or what he may have said until the morning following the accident. True, there is proof of the smell of alcohol on his breath, and that he made contradictory statements while questioned at the hospital, as for example, he thought a truck struck him. But I do not place great probative value on statements made under such circumstances. *One thing is certain; no one said that prosecutor was in fact intoxicated and that his intoxication was the natural and proximate cause of his injuries.* The burden of proof of the fact was on the respondent and although it had a detailed statement of the places visited and persons seen by the prosecutor after his drink at Haddonfield it did not produce any of these people who could perhaps have shed some light on the question of prosecutor's alleged intoxication. Respondent did, however, produce Dr. Edward H. Wyman, who examined and questioned the prosecutor, immediately after the accident, at the Burlington County Hospital. And Dr. Wyman, like all other witnesses, did not say that prosecutor was intoxicated and that his intoxication was the natural and proximate cause of the injuries which he sustained. Like some of the other witnesses he testified, in substance, to the smell of alcohol on prosecutor's breath; to statements made by prosecutor; and to his physical condition, &c. But when pressed for a specific or definite opinion would only go so far and no farther than to say that a person injured

immediately after an accident and before recovery of the shock thereof frequently does not remember the fact that he was examined or what, if anything, he may have said during the examination. He could not say whether prosecutor's mental faculties were impaired as a result of shock or intoxication; or the extent or degree which either affected prosecutor's sense of orientation. The doctor did say that either shock or alcohol was a factor in prosecutor's disorientation. Obviously the most favorable interpretation given to that proof, as well as to all other proofs, and the legitimate inferences to be drawn therefrom, still fails to satisfy the obligation which the respondent was obliged to meet, namely, that prosecutor's intoxication was the natural and proximate cause of his injuries.

The deputy commissioner held the case for three months (and this is not said by way of criticism but rather, as indicative perhaps of his doubt (*Gianfrancisco* v. *Public Service Co-ordinated Transport, supra*—at *p.* 222), and in disposing of it said, *inter alia:*

"* * * certainly, the shock attending the accident was not present and could not have played any part in his irrational handling of the car prior to his being injured. The element of shock, therefore, can be eliminated from the case in so far as its affecting the petitioner's mentality is concerned. We are left, therefore, only with his condition following his having indulged in intoxicants as an explanation of his actions. *I am, therefore, forced to the conclusion that this accident arose from the petitioner's physical condition and not as the result of an accident arising out of the hazard of his occupation.* Consequently, an award cannot be made in favor of the petitioner."

Clearly this is not the specific finding that was required to be made; it does not determine the issue between the parties. Moreover, I desire to point out that I do not quite understand how, under the proofs or otherwise, the commissioner could, with propriety, eliminate the element of shock. It was eliminated on the theory that it could not be present until after the happening of the accident; that is a *non sequitur*. An impending accident with an oncoming locomo-

tive is, it would seem to me, quite sufficient to shock even one who is blessed with nerves of steel; shock may, and often does, precipitate an accident.

The case is of great importance to each of the parties. I ought not be called upon to decide the rights of the respective parties without first having the benefit of that specific finding and determination which the workmen's compensation bureau is required to make under the law.

The judgment of the Common Pleas Court and that of the workmen's compensation bureau is reversed; the case will be remitted to the bureau to make the specific finding and determination which it is required to make.

Costs to abide the event.