9 N.J. Super. 495 (1950)
75 A.2d 557
ALEX KULINKA, BY HELEN BUJALSKI, GUARDIAN AD LITEM, PETITIONER-APPELLANT,
v.
FLOCKHART FOUNDRY COMPANY, RESPONDENT-APPELLEE.
Superior Court of New Jersey, Essex County Court Law Division.
Decided September 12, 1950.
*497 Sara M. Lewitt and Mr. Alexander Avidan for petitioner-appellant.
Messrs. James J. Carroll and Frank Fink for respondent-appellee.
FRANCIS, J.C.C.
The appeal here is from the dismissal of appellant's petition for workmen's compensation by the Workmen's Compensation Division of the Department of Labor.
The claim for compensation was presented by Helen Bujalski as guardian ad litem of the employee, Alex Kulinka. Prior to the hearing Kulinka had been committed to Greystone Park for mental incapacity which apparently resulted from the severe head injuries suffered in the accident out of which the action arose. However, no determination was made below on the subject of disability and the extent thereof, the parties having agreed that the issue of liability be disposed of first.
*498 The petition, as amended, sought compensation for Kulinka, alleging that on February 10, 1945, during the course of his regular work for respondent, he fell from a crane and was injured. While the case was tried below primarily on the defense of intoxication, the answer sent here with the record does not plead any such defense. Paragraph 37 of the answer which was filed on July 19, 1945, says:
"If you deny that compensation is payable in this case, explain your reasons for this conclusion."
To this respondent pleaded:
"Respondent denies petitioner suffered compensable accidental injury and leaves petitioner to full proof of all claims set forth in the petition."
At the hearing respondent amended this paragraph of the answer to read as follows:
"Respondent denies that petitioner suffered a compensable accidental injury and leaves petitioner to prove all claims set forth in the petition; that any disability or injury for which the employee. Alex Kulinka, may at this time be suffering from was the proximate and direct cause of any accident on February 10, 1945."
Neither of these allegations constitutes a pleading of the statutory affirmative defense that intoxication was "the natural and proximate cause of the injury." (R.S. 34:15-7).
However, since the case was fully tried by the parties on the issue of intoxication, without objection, it must be treated on appeal as if such issue had been pleaded properly.
For a number of years prior to the date of this accident respondent operated a foundry at Polk Street, Newark, New Jersey. The plant covered a square block in area.
Kulinka had worked there for about eight years. On the day of the mishap he was operating a crane. Pictures indicate that the cabs of these cranes moved along an elevated track which apparently ran for some distance through the *499 building. To get into the cab it was necessary to go up a narrow iron ladder to a point opposite its elevated position, then step across the three-foot space to the floor of the cab and climb over the top rail which was about three feet above the floor.
In the morning Kulinka worked with a fellow employee, Robert Mincy. Mincy was the ground man. During the morning they operated a crane which was suspended about 12 feet from the floor. The floor of its cab extended aboout 12 inches beyond the sides. This extension formed a ledge so that when the operator desired to get into the cab he would step from the ladder to this ledge, hold onto the top rail and climb over the rail.
This was the first time Mincy had ever worked with Kulinka. However, during the morning everything went "nicely"; Kulinka was a "good working man" and did a good job. He came down from the crane and left the building "a couple of times." Where he went and whether or not it was to the rest room, which was out of the building, Mincy did not know. And "a couple of times" when he was not busy he would "lie down on the crane." At no time during the morning did Mincy see him drink anything.
They quit work for lunch at 11:30 and Kulinka descended from the crane without difficulty. The lunch period was one-half hour and they had orders to work on a different crane in the afternoon. After lunch they were to meet at the place in the foundry where the other crane was located.
Petitioner's proof is to the effect that on leaving the plant he went to a nearby tavern. There, according to the proprietress, he had two one-ounce glasses of whisky and one glass of beer and he ate a sandwich. He remained about a half-hour when the plant whistle blew, at which time he got up and walked out of the place, obviously to return to work. The proprietress, who served the drinks, said he walked in properly and walked out the same way.
Petitioner produced another fellow employee, Herbert Williams, who said he too had ceased work for lunch and had *500 come into the tavern shortly after 11:30. Kulinka was there when he came in. Williams remained about 15 minutes and left. During this time Kulinka had one drink of whisky and one glass of beer.
Williams left the tavern at the end of the 15-minute period because he was drunk. He had brought a bottle of liquor to work with him this morning and had been imbibing. Kulinka did not work with him and had none of the liquor. So on his arrival at the tavern he was "very near drunk." After having two drinks and one glass of beer he was drunk and returned to the dressing room of the plant to sleep. He was found there by his superior and sent home.
It is quite obvious that his conceded drunkenness empties his testimony of any substantial probative force. In any event, respondent produced and used on cross-examination a signed statement which had been given by him on May 3, 1946, more than a year after the accident. Williams was unable to read or write English but could sign his name. The statement was taken by an investigator who had Mincy read it to him before his signature was affixed.
This statement, which was later put in evidence, says that at the tavern, while Williams was there, he, Kulinka and one Frank Lotush each had nine drinks. Each of them bought three rounds of drinks. He denied saying this and further said that he could not have bought any drinks as he had no money.
This statement, while usable on cross-examination to attack the credibility of the witness and admissible in evidence for that purpose, provided no substantive evidence whatever of Kulinka's drunkenness. And it could not be considered as such evidence. (Link v. Eastern Aircraft, 136 N.J.L. 540 (E. & A. 1948); Goglia v. Janssen Dairy Co., 116 N.J.L. 396 (E. & A. 1936); Muckin v. Hubbs, 128 N.J.L. 395 (E. & A. 1942); Rhodehouse v. Director General, 95 N.J.L. 355 (Sup. Ct. 1920); Wigmore on Evidence, Vol. 3, § 1018, p. 688; 28 R.C.L., § 219, p. 633; 58 Am. Jur. Sec. 770, Title, Witnesses.)
*501 The rule is tersely stated in Wigmore, supra, as follows:
"It is universally maintained by the courts that prior self-contradictions (of witnesses) are not to be treated as having any substantive or independent testimonial value." (Insertion mine; Link v. Eastern Aircraft, supra.)
Ruling Case Law, supra, says:
"One of the methods most frequently resorted to for the purpose of discrediting a witness is to show that he made prior statements which are inconsistent with or which contradict his testimony at the trial. * * * It is to be noted, however, that contradictory statements are admissible solely to impeach the witness, and for no other purpose. They are ineffective as direct and affirmative proof of the facts to which they relate."
As understood between them, Kulinka returned to the plant and met Mincy at about 12:05 P.M., 20 feet or so from the crane at which they were to work during the afternoon. While walking toward the ladder to be used for the ascent to the cab, Kulinka tripped and fell over some scrap pieces of castings. As Mincy helped him to his feet he said: "I am drunk like son of a bitch."
No objection was offered at the hearing to the admission of this statement. However, the argument is now made, albeit not very strenuously, that it is not evidential. But any admission of this character made in reasonable proximity to the particular event, which throws light on the subject of sobriety or insobriety is relevant and material.
Mincy asked Kulinka if he was too drunk to operate the crane, to which he replied that he could operate it all right. Then they proceeded toward the crane.
The crane Kulinka had been directed to operate this afternoon was not the one he used regularly. Its mechanism was different; it was located 15 to 20 feet above the ground and, undoubtedly, most significant of all, it did not have the 12-inch ledge or projection from the floor and beyond the sides, as had the one used in the morning. As already indicated, this projecting ledge provided a place for the operator to put *502 his foot when stepping from the ladder to the cab of the crane. With this ledge as a standing place it was a comparatively simple matter for the operator to put one leg after the other over the three-foot high side of the cab.
The photograph shows that the side of this crane nearest the ladder was only partially enclosed. Looking at the cab from the ladder the part of the side nearest the ladder was open from top rail to floor for a distance of about one and a half to two feet. This measurement does not appear in the record but the height from the floor to the top rail is fixed at about three feet and the open space referred to at the side appears to be about half that distance.
So, to get in this cab the operator had to step from the ladder to the open space at the side, place his feet, not on a projection, but on the floor itself, and then, while holding on to the top rail, climb over the side.
Kulinka walked to the ladder, climbed up the 18-inch apart rungs in what appeared to Mincy to be a normal manner and then stepped from the ladder through the open space in the side to the floor of the cab, without mishap, a feat which one of the medical experts doubted an intoxicated man could do. The exact manner in which the accident happened is somewhat obscure. Mincy was the only eye witness. On direct examination he said:
"He got over the ladder to the crane. He was standing there with the both feets on the bottom of the crane and holding on to the rail of the crane and I saw him make a jump and he was going back, as he was he tried to grab hold of the ladder and he didn't see it. I saw he was helpless and I called the nearest workman and before he could get back he dropped."
On cross-examination he was asked how long Kulinka was standing on the crane before the fall and he said: "Well, approximately two or three minutes, wasn't very long." And he was asked:
"Q. Now, when you saw him on the cage trying to put his leg over the bar, you were worried before he fell that he was going to fall, weren't you?
*503 "A. I knew he was going to fall unless he got some help."
It goes almost without saying that Mincy's assertion that Kulinka had been standing on the edge of the floor of the crane for two or three minutes before the fall is not impressive as to the actual time involved. The explanation of the accident on direct examination makes it plain that the stepping from the ladder to the floor of the cage and the attempt to climb over the top rail were a more or less continuous movement and that when the misstep or miscalculation occurred Kulinka, in an attempt to save himself, clung for an appreciable period of time before he fell. Like many lay witnesses in making the statement about two or three minutes he meant to indicate a very short time; in fact he added to his answer "wasn't very long."
Mincy testified that he did not know and could not say whether or not Kulinka was intoxicated. At one point in his cross-examination he asserted that at no time did he ever come to the conclusion or express the opinion that such was the fact.
As in the case of Williams, two statements signed by him were produced by respondent, used on cross-examination and received in evidence. One was signed February 13, 1945, and the other April 30, 1946. In the first of these statements the following appears:
"* * * Nothing of an unusual nature occurred during the morning hours but upon returning from lunch period (11:30 A.M. to 12 noon) I noticed that Alex Kulinka had evidently been drinking during lunch period and was at this time intoxicated."
At another point the statement says:
"Alex when reaching the top of the ladder reached out with his right hand and stepped onto the ledge of the crane's cab. He had stepped onto the ledge and was standing on same with both feet and holding on to the cage railing with both hands. I saw Alex trying to make an attempt to climb over the cage but realized that he was not going to be able to do so due to his state of intoxication."
Mincy denied having made these assertions about intoxication.
*504 The references in the statement to the "ledge" of the crane's cab are significant. There is no contradiction in the record of Mincy's testimony that the crane in use at the time of the fall had no ledge or projection for Kulinka to stand on and the photograph of the crane shows that it had no such ledge. If this were not the fact undoubtedly the employer would have produced adequate proof to the contrary.
In any event, the rule, already adverted to, with respect to the probative efficacy of these written statements must be kept in mind. They furnish a basis for an attack upon Mincy's credibility but they cannot be used as substantive proof of the fact of intoxication.
If the defense of intoxication were not in the case, manifestly the proof would be sufficient to establish that this employee suffered an accident which arose out of and in the course of his employment, when he fell from the crane. There is some suggestion in the determination of the Deputy Director that petitioner had failed to show a compensable accident by the preponderance of the evidence. However, the fact that the evidence does not show precisely what misstep or miscalculation produced the fall does not deprive the claim of compensability. It is not necessary to show that it was caused by a slip of the foot from the floor of the cab as an effort was made to swing one leg over the rail, or that the absence of such a ledge as was part of the morning crane made the foothold awkward and more precarious and so precipitated it, or that Kulinka lost his balance in swinging his leg over the rail or misjudged the height of the rail and so lost his balance, or that any one of many factors actually produced the fall. Such proof as was offered sufficiently establishes a compensable incident in the absence of evidence which would take the case out of the statute. If this were not the situation the right to compensation would be lost in many instances where death or mental incapacity resulted from an injury which occurred during the course of employment.
Fundamentally, therefore, the right to compensation here depends upon the determination of the issue of intoxication. *505 Has the respondent shown by the preponderance of all of the evidence in the record that Kulinka's intoxication was "the natural and proximate cause" of his injury?
The article "the" in this statutory context is a word of exclusion. It means that in order to defeat recovery the employer must show by the greater weight of the evidence that the employee's injury was produced solely by his intoxication. In other words, the employment must supply no more than the setting, the stage, the situation in which the fall occurred; it can be no more than an inactive condition as distinguished from a moving cause. If the hazards or risks which are incidental to the employment concur with the employee's insobriety in producing the fall or if the hazards or risks contribute efficiently to the production of the fall, compensation cannot be denied. If the Legislature intended intoxication as a concurrent or contributory cause of an injury to effect a deprivation of the benefits of the statute it would have been a simple matter to have said so.
This view was expressed by the Court of Errors and Appeals in the second of the three reported opinions in Patton v. American Oil Co., 13 N.J. Misc. 825 (Sup. Ct. 1935); 116 N.J.L. 382 (E. & A. 1936); denial of compensation after retrial sustained, 15 N.J. Misc. 564 (Sup. Ct. 1937). There the court said that if the conclusion was reached after hearing that the workman "was intoxicated and that such intoxication was the sole and proximate cause of the accident," compensation should be denied.
In the present case the only substantial evidence of intoxication arises from the proof that Kulinka had two one-ounce drinks of whisky and one glass of beer with a lunch that consisted of one sandwich, that he fell over some scrap castings on the dirt floor of his employer's premises and on arising said he was "drunk like a son of a bitch" and that he fell from the crane under the circumstances described.
The statement attributed to Kulinka with respect to his intoxication was not susceptible to affirmation or denial by him because of his confinement to Greystone Park. Consequently *506 it must be evaluated carefully against the background of all the evidence and particularly any other qualifying statements he may have made, as well as his conduct and actions both before and after and until his fall occurred. Immediately after allegedly saying he was drunk he said he was capable of operating the crane. According to the substantive evidence he had not consumed a very great quantity of liquor at lunch; he returned to the place in the plant where he was supposed to meet Mincy, which point was different from the site of the morning work; there is no proof that he was unsteady or staggering at this time nor as he walked to the location of the crane. On the other hand, it affirmatively appears that he went up the 13 rungs of the narrow iron ladder, which were about 18 inches apart, in a normal manner and made the step across to the cage in the same manner.
It cannot be overlooked that this afternoon crane was not his regular one and that it did not have an outside ledge or step as had the one used in the morning. There is no proof that he was aware of this structural difference. And it is reasonable to suppose that it would be less awkward to step from the ladder to an outside ledge and from that vantage point to climb over the three-foot rail than to place a foot or both feet on the floor of the cab itself within an opening of about a foot and one-half or two feet in the side of the cab and from this position throw a leg over the top rail. This might be true especially if the absence of the ledge was unexpected.
As already indicated, it seems reasonably inferable from the evidence that Kulinka's operation was a more or less continuous one. He climbed the ladder, stepped in on the floor of the cab with both feet, undertook to throw one leg over the top rail from this more awkward position than he had experienced in the morning, missed somehow or lost his balance, clung to the cab for a short time, and then fell to the ground. It is conceivable that his foot may have struck the edge of the closed portion of the side of the cab, when he attempted to swing his leg over the rail.
*507 After a careful study of all of the evidence and the inferences to be drawn therefrom, in my judgment the respondent has not excluded the particular hazards of Kulinka's employment task as a possible cause or contributory or concurring cause of his fall; nor has it been shown by the preponderance of the reasonable probabilities on all the proof that intoxication was the sole proximate cause thereof. In short, the respondent has failed to sustain the statutory defense of intoxication by the greater weight of the evidence.
While I am acutely aware of the admonition set out in Gilbert v. Gilbert Machine Works, Inc., 122 N.J.L. 553, 6 A.2d 213 (Sup. Ct. 1939), and reiterated in Jacobson v. Kaminsky, 8 N.J. Super. 279, 74 A.2d 320 (1950), that "there is a natural hesitation on the part of the appellate tribunal, confined as it is to the written word, to disturb factual conclusions of the judicial officer to whom the evidence has been orally presented," I cannot, in the discharge of the obligation to grant an independent review on the record below, come to a different conclusion. Examination of the determination of the Deputy Director leads inescapably to the view that he treated the contents of the signed statements of Mincy and Williams as substantive evidence of Kulinka's intoxication and that he was influenced considerably thereby. They were not usable for that purpose and when they are considered within their limited scope, it becomes apparent that the defense has not been sustained by the preponderance of the evidence.
Under the circumstances the petitioner's claim is adjudged compensable, the judgment below is reversed, and the action is remanded for the determination of the extent of the workman's disability.