31 N.J. Super. 387 (1954)
107 A.2d 9
JEAN P. O'REILLY, PETITIONER-RESPONDENT,
v.
ROBERTO HOMES, INC., AND HOME INDEMNITY COMPANY, RESPONDENTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided July 1, 1954.
*389 Before Judges CLAPP, SMALLEY and SCHETTINO.
Mr. John A. Laird argued the cause for petitioner-respondent (Messrs. Roskein & Laird, attorneys).
Mr. Philip M. Lustbader argued the cause for respondents-appellants (Messrs. Schneider & Schneider, attorneys).
The opinion of the court was delivered by SCHETTINO, J.S.C. (temporarily assigned).
This appeal is from a judgment of the County Court reversing an order of the Division of Compensation, Department of Labor and Industry dismissing the petition.
The statutory prerequisites to establish a compensable injury by accident under R.S. 34:15-7 are that petitioner must prove an accident and then must prove that the alleged accident arose not only in the course of employment but also out of the employment. The burden is upon petitioner to prove these essential and indispensable elements by a preponderance of the evidence. Becker v. City of Union City, 17 N.J. Super. 217, 222, 223 (App. Div. 1952). We recognize authority to the effect that, although the County Court should consider the Deputy Director's findings of fact and give due but not necessarily controlling regard to them, this court gives determinative weight in the first instance to the findings of the County Court. Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258, 262 (App. Div. 1950).
The appeal presents two issues each of which was decided adversely to petitioner by the Deputy Director and in favor of petitioner by the County Court. They are: (1) was decedent in the course of his employment when the accident *390 occurred? and (2) was intoxication "the natural and proximate cause" of the accident and did the employer sustain the burden of proof under R.S. 34:15-7?
Petitioner is the widow of John J. O'Reilly, who had been in the employ of defendant, Roberto Homes, Inc., on the day of his death. Petitioner's decedent was employed as a construction laborer on this defendant's building projects in Demarest and Hohokus. His regular work hours were from 8:00 A.M. to 4:30 P.M.
The employer's construction superintendent testified that decedent was given an extra job of lighting oil heaters in the buildings under construction in Hohokus in order to permit plastering and to keep the plaster from freezing. For this extra work the decedent was paid $2 per hour for three hours each day for seven days a week. In carrying out the duties of the extra work O'Reilly would travel by his own automobile some five or six miles each way from his home to the job; once, during the night about midnight, and the other time at about 6:00 A.M. before reporting for his regular work. The total time consumed in filling the oil heaters was between 15 and 30 minutes. The overall time for travel was about an hour.
On December 23, 1951 decedent was returning to his home after refueling the oil heaters when his automobile ran into a tree on the left side of a two-lane public highway 30 feet in width. He was killed instantly. The time of the accident was placed between 2:00 A.M. and 2:55 A.M.
The facts in this case are not in wide dispute, and thus the issues depend upon divergent conclusions as to questions of law rather than fact. As a general rule an injury which occurs when an employee is on his way to or from the place of employment is not covered by the Compensation Act. However, when the transportation is included as part of his remuneration (Demerest v. Guild, 114 N.J.L. 472, 176 A. 558 (E. & A. 1935)), or the employee is on a special errand, the courts have held an exception to the above rule. In Moosebrugger v. Prospect Presbyterian Church, 12 N.J. *391 212, 96 A.2d 401 (1953), the special service exception was held not applicable to a janitor of a church who was injured while on his way to the church in the evening for a special event after his regular daytime job was through. The Supreme Court denied relief because his evening duty was a recurring function, was an integral part of his work, was a normal incident of his work, included in his weekly stipend, and not "extra" work. It should be noted that the Moosebrugger case may be distinguished from the case at hand because "extra work" was involved here and the decedent was recompensed by an added pay arrangement. Here the employer paid the decedent $6 per day extra to keep the oil heaters lit. The assistant superintendent who hired decedent for the extra job testified that there was no agreement as such as to transportation. But further testimony showed that the actual time involved in lighting and refueling the salamanders was 15 minutes to 30 minutes, and the total time involved for the extra job, including traveling time, amounted to three hours each day for which he was paid $6. From this it may be adduced that decedent was paid not merely to light the oil heaters but also for traveling time.
We conclude that the employer and decedent took into consideration that decedent be paid for traveling and also that he use his own car, since he was required to travel late at night when bus transportation was unlikely or at best round about travel. We feel that O'Reilly was in the course of his employment while driving to and from the Hohokus project where the bother and effort of his trips, although regularly made, were important parts of the services for which he was compensated. 1 Larson, Workmen's Compensation Law, secs. 16.10 and 16.11, pp. 224, 225.
Where a man, such as the decedent, was paid $6 for 15 to 30 minutes' actual work, a fair inference may be drawn that part of the bargain covered his time in getting there at odd hours and his additional effort in making such a trip. It is also reasonable to infer that the use of his automobile in making the trip was part of the arrangement for which he *392 was compensated. Therefore, O'Reilly was in the scope of and course of employment while going to and returning from the job of lighting the oil heaters.
It is further claimed that decedent deviated from the course of his employment. While returning home, decedent stopped at a gas station for gas. The attendant testified that decedent drove into his station between 1:30 A.M. and 2:00 A.M. They had known each other before. They talked for 30 to 40 minutes about their respective jobs. We note in passing that the Deputy Director stated that he was very much impressed by the gas station attendant. The Deputy Director considered that decedent left the gas station about 2:40 A.M. and that the scene of the accident was one mile from the station and that the police arrived at 2:55 A.M. in response to a radio call. Who called the police and at what time after the accident the police were called was not testified to. But the Deputy Director, without proof of what happened to decedent between 2:40 A.M. and the time the police arrived, assumed that the decedent deviated from his employment since he could not have required 15 minutes to drive the one mile distance, and further stated that petitioner offered no satisfactory explanation as to how decedent had spent the time between 2:40 A.M. and 2:55 A.M., and that even if decedent had been in his employment at the particular time he had abandoned it. We find no proof in the record to sustain these findings.
As to the matter of intoxication, R.S. 34:15-7 requires that an employer, seeking to show intoxication as a defense, demonstrate that it is "the natural and proximate cause of injury." In Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495 (Cty. Ct. 1950), affirmed sub nomine Bujalski v. Flockhart Foundry Co., per curiam and substantially on opinion below, 16 N.J. Super. 249 (App. Div. 1951), certification denied 8 N.J. 505 (1952), the court interpreted this statute to mean "solely" produced by intoxication. (9 N.J. Super. 505.) See 1 Larson, supra, secs. 34.33, 34.34, pp. 492, 493.
*393 Thus the New Jersey rule today is that the employer must show intoxication as a cause to the exclusion of all others.
"It means that in order to defeat recovery the employer must show by the greater weight of the evidence that the employee's injury was produced solely by his intoxication. In other words, the employment must supply no more than the setting, the stage, the situation in which the fall occurred; it can be no more than an inactive condition as distinguished from a moving cause. If the hazards or risks which are incidental to the employment concur with the employee's insobriety in producing the fall or if the hazards or risks contribute efficiently to the production of the fall, compensation cannot be denied. If the Legislature intended intoxication as a concurrent or contributory cause of an injury to effect a deprivation of the benefits of the statute it would have been a simple matter to have said so.
This view was expressed by the Court of Errors and Appeals in the second of the three reported opinions in Patton v. American Oil Co., 13 N.J. Misc. 825 (Sup. Ct. 1935); 116 N.J.L. 382 (E. & A. 1936); denial of compensation after retrial sustained, 15 N.J. Misc. 564 (Sup. Ct. 1937). There the court said that if the conclusion was reached after hearing that the workman `was intoxicated and that such intoxication was the sole and proximate cause of the accident,' compensation should be denied."
Kulinka v. Flockhart Foundry Co., supra (p. 505). See also Kelly v. Hackensack Water Co., 23 N.J. Super. 88, 92 (App. Div. 1952).
The employer must show intoxication as the sole and proximate cause of the injury and it is not enough that the condition of the worker was a contributing factor in bringing about the accident. Van Note v. Coombs, 24 N.J. Super. 529, 532 (App. Div. 1953). The testimony was that in the afternoon decedent had a few beers, and that later that evening the decedent had three or four eggnogs containing rye whiskey. The toxicologist report showed alcoholic content in the brain to be ".1965 per cent, which is equivalent to 1.965 gram of alcohol per kilogram of brain." According to the weight of the testimony, such a percentage of content may produce a state of intoxication which would affect different people and drivers in varying degrees.
The exact cause of the accident in the present case is open to mere speculation since there are no witnesses to the accident. *394 There is disputed testimony of tire marks or "skid" marks. The gas station attendant who last saw decedent shortly before the accident testified that the decedent did not appear intoxicated to him. We may speculate that perhaps the accident was caused by faulty mechanism or perhaps decedent fell asleep at the wheel of the car since it was late at night and decedent worked long hours.
Respondent has not carried the burden of proving intoxication as the sole factor of the accident as required by R.S. 34:15-7. The nature of the employee's duties exposed him to highway dangers; the accident was directly attributed to a risk of the highway to which the employment exposed him and the injuries and death followed as a rational sequence from a risk connected with the employment. Sanders v. Jarka Corp., 1 N.J. 36 (1948); White v. Sindlinger, 30 N.J. Super. 525 (App. Div. 1954).
We agree with the County Court that petitioner sustained her burden of proof and that the record discloses competent believable evidence sufficient to sustain a finding that decedent incurred an accident arising out of and in the course of his employment with appellant.
Affirmed.