902 A.2d 222

JAMES E. TLUMAC, PETITIONER–RESPONDENT, v. HIGH BRIDGE STONE, RESPONDENT–APPELLANT.

Argued March 20, 2006—Decided July 19, 2006.

*Robert N. Golden* argued the cause for appellant (*Golden, Rothschild, Spagnola, Lundell, Levitt & Boylan,* attorneys).

*Craig Voorhees* argued the cause for respondent (*Lieberman, Ryan & Forrest,* attorneys).

Justice WALLACE, JR. delivered the opinion of the Court.

Petitioner James Tlumac was seriously injured in a tractor-trailer accident at work and sought workers' compensation benefits. His employer, respondent High Bridge Stone (High Bridge), asserted the statutory defense of intoxication. The compensation judge found that petitioner's intoxication was not the sole cause of the accident and awarded benefits to petitioner. The Appellate Division affirmed. We hold that the statutory defense of intoxi-

cation requires that intoxication be the sole cause of the accident to bar recovery for workers' compensation benefits. Because there was sufficient credible evidence for the compensation judge to conclude that intoxication was not the sole cause of the accident, we affirm.

## I.

Petitioner was an experienced truck driver who began working for High Bridge in March 2002. His typical day started around 3 a.m. and ended around 4 p.m. During February 2004, petitioner worked twelve days in a row, logging a total of 230 hours. Early that month, petitioner's wife suffered a broken hip, causing him to incur additional family responsibilities that resulted in his losing approximately two to three hours of sleep each night.

On February 28, 2004, petitioner installed shingles on the roof of his home. The next day, he consumed beer while continuing to work on the roof. Petitioner did not recall how much he drank that day, but his wife testified that he usually consumed about ten beers on a weekend day. After completing the work on the roof, petitioner showered and had a beer. He did not eat dinner before going to bed at around 8:00 p.m.

Petitioner woke at about 2:15 a.m. Monday morning to prepare for work. His wife recalled waking up and talking to him as he made coffee and prepared a sandwich for his lunch. She observed no impairment in his speech or his ability to stand or walk.

Petitioner drove approximately two miles to his place of employment. He arrived for work at 3:15 a.m., obtained his paperwork and inspected his flatbed tractor-trailer. He was scheduled to deliver approximately 77,000 pounds of Belgian block to Virginia. Petitioner departed around 3:30 a.m. and traveled approximately thirty miles south on Route 31. Prior to the accident, petitioner navigated turns, a traffic circle, and an exit ramp. The last thing he remembered was driving through a green light and approaching a turn to pass over a bridge.

Police Officer Christopher Vaccarino arrived at the accident scene at 4:14 a.m. He noted in his report that the tractor-trailer traveled 180 feet off the road, contacted the curb for eighty feet, jumped the curb and traveled sixty-six feet on the dirt shoulder, hit and rubbed against the guardrail for 247 feet, struck the front bumper of a parked truck, and hit a utility pole before resting against a tree. The officer found petitioner in the driver's seat, disoriented with head injuries. Vaccarino detected an odor of alcohol and asked petitioner if he had been drinking.

Petitioner responded that he had been drinking the night before. He said he fell asleep at the wheel and complained that his head hurt. The officer did not find any signs of alcohol during the vehicle search. Petitioner was admitted to the hospital's intensive care unit with a concussion, head and face lacerations, a broken clavicle, a broken back, and a fractured vertebra in his neck. Hospital personnel drew blood samples from petitioner at 5:28 a.m. and 7:19 a.m. on the morning of the accident. Petitioner remained in the hospital for seventeen days.

On March 19, 2004, petitioner filed a motion for temporary disability and medical benefits with the Division of Workers' Compensation alleging injuries from his work-related accident. High Bridge raised the statutory defense of intoxication, pursuant to *N.J.S.A.* 34:15–7. At the hearing before the compensation judge, petitioner and his wife testified in support of his claim. In opposition, High Bridge presented the testimony of John Brick, Ph.D., a biological psychologist concentrating in drug and alcohol studies. Dr. Brick reviewed the hospital blood tests and testified that the 5:28 a.m. blood sample had a blood alcohol level of .087 and the 7:19 a.m. blood sample had a blood alcohol level of .088. Dr. Brick explained that based on the first blood sample, petitioner's blood alcohol level at the time of the accident would have been between .10 and .12, and based on the second sample it would have been between .12 and .18. Dr. Brick opined that at the time of the accident, petitioner's blood alcohol level was on the decline and that intoxication was the primary cause of the accident. He

conceded that not all accidents involving intoxicated drivers are caused by intoxication and agreed that factors including vehicle design and functioning, the speed of the vehicle, the lighting, the roadway characteristics, and the driver's mental state and alertness can contribute to accidents. He acknowledged that sleep deprivation can have a negative effect on mental and physical performance.

The compensation judge concluded that workers' compensation benefits must be denied when intoxication is the sole cause of the accident. The judge then made the following findings:

> I find no way to refute petitioner's statement that he fell asleep at the wheel. While this may have been caused by the amount of alcohol in his body, there is no way to prove this. . . . Given the time of the morning during which he was driving, the stress of his home life, the number of hours of work he had been engaged in during the three weeks prior to the accident, and his activity repairing the roof of his house over the weekend, might or could have caused anyone, even someone who was not intoxicated, to fall asleep or even just "drift off" for long enough to lose control.

The judge concluded that High Bridge failed to meet its burden of establishing that intoxication was the sole cause of the accident and entered judgment in favor of petitioner.

In an unpublished opinion, the Appellate Division agreed with the compensation judge's conclusion that in order for intoxication to serve as a defense, the employer must prove by a preponderance of the evidence that intoxication was the sole cause of the employee's injuries. The panel found sufficient evidence to support the compensation judge's finding that petitioner's intoxication was not the sole cause of the accident.

We granted High Bridge's petition for certification. 185 *N.J.* 390, 886 *A.*2d 660 (2005).

## II.

The Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –128, (Act) requires employers to compensate employees for accidental injuries "arising out of and in the course of . . . employment." *N.J.S.A.* 34:15–1. As remedial legislation, our courts have

interpreted the Act broadly to achieve the goal of "affording coverage to as many workers as possible." *Brower v. ICT Group*, 164 *N.J.* 367, 373, 753 *A.2d* 1045 (2000) (citation omitted). Generally, the injured employee is entitled to recover workers' compensation benefits regardless of fault. However, the Legislature has provided a bar to recovery of benefits in limited circumstances. *See N.J.S.A.* 34:15–7.

The Act provides that compensation benefits are required in cases of personal injury or death of an employee "arising out of and in the course of employment ... except when the injury or death is intentionally self-inflicted, or when intoxication or the unlawful use of controlled dangerous substances ... is the natural and proximate cause of injury or death." *Ibid.* Our courts have interpreted this statute to mean that the employee's intoxication must "be the sole cause" of the accident. *White v. Atl. City Press*, 64 *N.J.* 128, 137 n. 1, 313 *A.2d* 197 (1973) (citing *Olivera v. Hatco Chem. Co.*, 55 *N.J.Super.* 336, 350, 150 *A.2d* 781 (App.Div.) (noting employer must establish by greater weight of evidence that intoxication was sole cause of death), *certif. denied*, 30 *N.J.* 557, 154 *A.2d* 449 (1959)); *Warner v. Vanco Mfg. Inc.*, 299 *N.J.Super.* 349, 354, 690 *A.2d* 1126 (App.Div.) (noting that employer must establish employee's injury caused solely by employee's intoxication to defeat compensation award), *certif. denied*, 151 *N.J.* 72, 697 *A.2d* 544 (1997). That interpretation of the statute was explained in *Kulinka v. Flockhart Foundry Co.*, 9 *N.J.Super.* 495, 75 *A.2d* 557 (Law Div.1950), *aff'd sub nom., Bujalski v. Flockhart Foundry Co.*, 16 *N.J.Super.* 249, 84 *A.2d* 468 (App.Div.1951) (*per curiam* and substantially for reasons articulated in *Kulinka* ), *certif. denied*, 8 *N.J.* 505, 86 *A.2d* 321 (1952). There the court stated

that in order to defeat recovery the employer must show by the greater weight of the evidence that the employee's injury was produced solely by his intoxication. . . . If the Legislature intended intoxication as a concurrent or contributory cause of an injury to effect a deprivation of the benefits of the statute it would have been a simple matter to have said so.

This view was expressed by the Court of Errors and Appeals in the second of the three reported opinions in *Patton v. American Oil Co.*, 13 *N.J. Misc.* 825, 181 *A.* 651 (Sup.Ct.1935); 116 *N.J.L.* 382, 185 *A.* 35 (E. & A.1936); denial of compensation

after retrial sustained, 15 *N.J. Misc.* 564, 193 *A.* 541 (Sup.Ct.1937). There the court said that if the conclusion was reached after hearing that the workman "was intoxicated and that such intoxication was the sole and proximate cause of the accident," compensation should be denied.

[*Kulinka, supra,* 9 *N.J.Super.* at 505, 75 *A.*2d 557.]

When interpreting a statute, the Court's role is to effectuate the will of the Legislature. *State v. Brannon,* 178 *N.J.* 500, 505, 842 *A.*2d 148 (2004). Consistent with the long-standing interpretation that courts have given to *N.J.S.A.* 34:15–7 and the legislative acquiescence in that interpretation, we conclude that the Legislature intended workers' compensation benefits to be denied only if intoxication was the sole cause of an employee's work-related injuries. *See Macedo v. Dello Russo,* 178 *N.J.* 340, 346, 840 *A.*2d 238 (2004). Consequently, unless the employer shows by a preponderance of the evidence that the employee's work-related injuries were caused solely by intoxication, the employee is entitled to recover workers' compensation benefits.

That interpretation is in keeping with the remedial purpose of the Workers' Compensation Act—to make benefits readily and broadly available to injured workers through a non-complicated process. *See Brower, supra,* 164 *N.J.* at 373, 753 *A.*2d 1045. We recognize, however, that the intent of the Legislature when it enacted the Workers' Compensation Act in 1911—a time before mass ownership of automobiles—may no longer comport with current policies aimed at deterring the dangers of drinking and driving. Nevertheless, any change in that interpretation must come from the Legislature.

Further, we have often stated that an appellate court's role in reviewing the determination of a state agency is a limited one. *Sager v. O.A. Peterson Constr. Co.,* 182 *N.J.* 156, 164, 862 *A.*2d 1119 (2004). It may not substitute its own factfinding for that of the agency. *Ibid.* The court must defer to the agency decision if the findings of fact are supported by substantial credible evidence in the record and are not so wide off the mark as to be manifestly mistaken. *Bradley v. Henry Townsend Moving & Storage Co.,* 78

*N.J.* 532, 534, 397 *A.*2d 323 (1979); *Close v. Kordulak Bros.,* 44 *N.J.* 589, 598–99, 210 *A.*2d 753 (1965).

In the present case, there was sufficient evidence for the compensation judge to find that although petitioner's intoxication may have contributed to the accident, other factors such as the time of the accident, the stress of petitioner's home life, the excessive hours he worked during the three weeks prior to the accident, and petitioner's activity in repairing the roof of his house over the weekend "may have caused him to fall asleep and lose control of the vehicle." Consequently, we affirm the judgment awarding benefits.

### III.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.