**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0656-20

MEGHAN RYAN-WIRTH,

    Petitioner-Appellant,

v.

HOBOKEN BOARD OF
EDUCATION,

    Respondent-Respondent.

_____

        Argued November 17, 2021 – Decided December 8, 2021

        Before Judges Hoffman and Geiger.

        On appeal from the New Jersey Division of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2019-28015.

        William P. Hannan argued the cause for appellant (Oxfeld Cohen, PC, attorneys; William P. Hannan and Barry L. Frank, of counsel and on the briefs).

        Andrea L. Schlafer argued the cause for respondent (Capehart & Scatchard, PA, attorneys; John H. Geaney and Andrea L. Schlafer, of counsel and on the brief).

PER CURIAM

Petitioner Meghan Ryan-Wirth appeals from the dismissal with prejudice of her claim for temporary disability and medical benefits under the Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -142. We affirm.

We derive the following facts from the record. Petitioner was hired as a school nurse by respondent Hoboken Board of Education in October 2018. She was assigned to an elementary school during the 2018-2019 school year, where she also worked in the after-school care program as a swimming instructor to earn extra income. Petitioner went on maternity leave from May 6, 2019 until the end of the term.

Petitioner returned to work in September 2019 as a school nurse at the Hoboken Middle School. Desiring to earn extra income at her new position, petitioner reached out to the Middle School's Principal, Dr. Harold Abraham, to inquire about the A.M. Care program for students who needed to arrive early to school from 7:30 a.m. to 8:15 a.m. Teachers and other staff who assisted as monitors of the A.M. Care program received a stipend of thirty dollars per day.

Petitioner emailed Abraham expressing interest in working in the A.M. Care program. On September 9, 2019, Abraham advised petitioner she would need to apply for the position and once she applied, she "could begin working

each morning." Petitioner did so. Abraham directed her to complete a time sheet and submit her hours each week.

Petitioner arrived for A.M. Care on September 10 and saw Abraham in the main office. He told her to go downstairs where the other staff were. Petitioner testified she did not "have a good idea of what [she] was supposed to do" and had not been given any instructions or paperwork describing her duties at A.M. Care. Petitioner was stationed to monitor "the hallway between the cafeteria and the gym" and the students were "in various parts of the school."

On September 11, 2019, petitioner arrived at school early with the intention to participate in A.M. Care. While entering the school, petitioner was greeted by Abraham, who was dressed in workout clothes. Abraham invited her to participate in the school's Cardio Club, where students, parents and staff engage in cardiovascular exercise in the gym, next to the cafeteria where students participate in A.M. Care. Petitioner testified that Abraham stated, "we're going to work out today in the gym. You can join us[,]" to which she responded that she wasn't prepared to work out today and "was going to Morning Care." Abraham replied, "[w]ell, it's up to you."

Petitioner testified that as a new subordinate under Abraham, she felt she should follow "his directive" and after remembering she had gym clothes in her

car she changed out of professional clothes and reported downstairs for Cardio Club "like the principal had instructed [her] to." Petitioner testified that Abraham did not advise her she would not be paid for attending Cardio Club or that it was different from A.M. Care.

While participating in Cardio Club, but thinking she was participating in A.M. Care, petitioner was pulling a car tire in a relay race and fell backwards landing on her bottom on September 11. Abraham witnessed the fall, offered to help petitioner to her feet, and when she could not stand, he called for an ambulance. Petitioner was taken to Hoboken University Medical Center, admitted for two nights, and discharged on September 13, 2019. Petitioner's orthopedic surgeon diagnosed her with a closed wedge compression fracture of her fifth lumbar vertebrae and directed her to use a wheelchair. Petitioner was told by her surgeon she would miss work for approximately three months. A disability certificate issued by her surgeon stated petitioner was under his care and that she would be out-of-work from September 11 to December 17, 2019.

On October 3, 2019, petitioner filed a claims petition against respondent for temporary disability and medical benefits. Respondent filed an answer acknowledging that petitioner was "in employment" on the date of the injury but

that her injury did not arise out of or in the course of her employment. Petitioner then moved for temporary and/or medical benefits under N.J.A.C. 12:235-3.2.

On January 21, 2020, the parties agreed to bifurcate the trial and proceed first with the issue of compensability. The trial on that issue was conducted over the course of three nonconsecutive days. Petitioner, Abraham, and three other school employees testified.

Petitioner testified she would not have participated in Cardio Club if she knew she was not going to be paid because she took the job in A.M. Care so that she could earn extra income. Petitioner testified that she did not sign in at the main office as she had done the day before because she was not expecting to change her clothes from professional clothes to workout clothes before 7:30 a.m. According to petitioner, no one explained to her there was a difference between the gym side and the cafeteria side of the basement where activities went on in the mornings. She testified she was "just instructed to participate in activities" which she thought was A.M. Care.

Petitioner testified that the exercise at Cardio Club was very different from her usual exercises. She stated that in her personal time she jogs, walks, and does yoga. Cardio Club is much more physical and consists of pulling activities, calisthenics, and team activities.

5

On cross examination, petitioner was questioned about her physical fitness goals. Six weeks after giving birth, petitioner's physician cleared her to exercise. She typically went for walks and to the gym about twice a week. Before she became pregnant and after giving birth, petitioner participated in a weight loss challenge to lose thirty pounds by Christmas for a cash prize. She testified it was generally her goal to maintain a healthy lifestyle and to set a good example for children in the schools where she worked.

Abraham testified that on the date of petitioner's fall he was greeting students outside before Cardio Club began and saw petitioner wearing workout attire. "She asked if she could attend the Cardio Club. [Abraham] told her [the school] had enough staff to support morning care and that she could attend if she would like." He further testified that he told her she would not be paid if she participated in Cardio Club rather than proceeding to A.M. Care. Abraham testified that about five of the forty-five staff members attended Cardio Club.

As a staff member who had worked in A.M. Care, Cindy Bagnoli testified about the information she received when she began working in the mornings at A.M. Care. She testified that when she first began working at A.M. Care three years earlier, she was told her job duties and received a handout regarding the duties, which were mainly to monitor students eating breakfast in the cafeteria.

6

When asked about September 10, the first day that term of A.M. Care, Bagnoli vacillated on whether students were stationed in the cafeteria, the auditorium, the gym, or some combination of the three. She struggled to answer because it was the first year that sixth graders were included, and they were still "trying to figure out what worked best." On cross-examination, Bagnoli testified that appellant could have been stationed for A.M. Care "in the gym, cafeteria or auditorium" on September 10. After the first two or three days, students who attended A.M. Care went to either the auditorium or cafeteria depending on their grade level. She later clarified that all the students regularly come to the cafeteria and are then dismissed depending on their grade level.

Teacher Daniel Bosgra testified that on the first day of school, September 10, the sixth graders attending A.M. Care were in the gymnasium. Additionally, Bosgra stated the principal "met with us, because he used to be at the door greeting everybody, so he kind of told us what he wanted us to do at [A.M. Care]" the year before, when Bosgra began working in A.M. Care.

Teacher Melissa Gerson Bruce was called by petitioner as a rebuttal witness. She testified that she spoke with petitioner on the morning of the accident. When asked by petitioner if she was doing Cardio Club, Gerson Bruce responded affirmatively. Petitioner then said: "Oh, that looks fun. Should I do

7

it?" Gerson Bruce replied, "[s]ure. It should be fine." Petitioner then said she needed to run to her car to grab something. On cross-examination, Gerson Bruce testified that that she felt Cardio Club was completely voluntary and separate from her employment. Gerson Bruce never heard of any staff being fired, demoted, or reprimanded for not participating in Cardio Club. Only three or four teachers participated in A.M. Care.

Following briefing and oral argument, the compensation judge issued an oral decision dismissing petitioner's claim for temporary disability and medical benefits with prejudice, for failure to sustain her burden of proof. On September 30, 2020, an order embodying the decision was entered. This appeal followed.

Petitioner argues:

> THE COMPENSATION COURT ERRED IN FINDING THAT APPELLANT'S INJURY WAS NOT COMPENSIBLE BECAUSE HER INJURY DID NOT ARISE OUT OF HER EMPLOYMENT WITH THE RESPONDENT.
>
> > a. Overview of the Decision of the Compensation Court.
> >
> > b. The Compensation Court Erred in Concluding that Appellant's Injury Did Not Arise out of Her Employment with the Respondent.
> >
> > c. The Social or Recreational Activity Exception Does Not Render Appellant's Injury Non-Compensable.

8                                                                          A-0656-20

Our review of a final decision of a judge of compensation is limited and deferential. Lapsley v. Twp. of Sparta, 466 N.J. Super. 160, 167 (App. Div. 2021). We accord "substantial deference" to the factual findings made by a workers' compensation judge "in recognition of the compensation judge's expertise and opportunity to hear witnesses and assess their credibility." Goulding v. NJ Friendship House, 245 N.J. 157, 167 (2021) (quoting Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998)). Thus, appellate review is "limited to whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole.'" Ibid. (quoting Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 164 (2004)). "We may not substitute our own factfinding for that of the Judge of Compensation even if we were inclined to do so." Lombardo v. Revlon, Inc., 328 N.J. Super. 484, 488 (App. Div. 2000). Rather, we defer to the agency unless its findings of fact are "so wide of the mark as to be manifestly mistaken." Ibid. (citations omitted).

Although a judge of compensation's interpretation of a statute is "entitled to some weight, [it] is not binding on the reviewing court." Goulding, 245 N.J. at 167 (quoting Brock v. PSE&G, 149 N.J. 378, 383 (1997)). We review the judge of compensation's legal findings de novo. Hersh v. Cnty. of Morris, 217

9

N.J. 236, 243 (2014) (citing Williams v. A & L Packing & Storage, 314 N.J. Super. 460, 464 (App. Div. 1998)).

The Workers' Compensation Act is remedial legislation designed to be interpreted broadly to provide "coverage to as many workers as possible." Tlumac v. High Bridge Stone, 187 N.J. 567, 572 (2006) (quoting Brower v. ICT Grp., 164 N.J. 367, 373 (2000)). Our courts "liberally construe the Act" to effectuate that legislative policy. Goulding, 245 N.J. at 167 (quoting Brower, 164 N.J. at 373). Nevertheless, the petitioner bears the burden of establishing the compensability of their injuries by a preponderance of the evidence. Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 263 (2003).

Except for a few clearly delineated exclusions stated in N.J.S.A. 34:15-7, "the injured employee is entitled to recover workers' compensation benefits regardless of fault." Tlumac, 187 N.J. at 572. An employee is entitled to benefits under the Act if injured in an "accident arising out of and in the course of employment . . . ." N.J.S.A. 34:15–7. The phrase "arising out of" refers to "causal origin"; "in the course of employment" refers to the "time, place, and circumstances of the accident in relation to the employment." Zahner v. Pathmark Stores, Inc., 321 N.J. Super. 471, 477 (App. Div. 1999) (citations omitted). "[T]he basic concept of compensation coverage . . . is best expressed

in the term work connection."  Ibid. (quoting Cannuscio v. Claridge Hotel &

Casino, 319 N.J. Super. 342, 350 (App. Div. 1999)).

N.J.S.A. 34:15-7 further provides that when "recreational or social

activities" "are the natural and proximate cause of" the injuries, they are not

compensable, "unless such recreational or social activities are a regular incident

of employment and produce a benefit to the employer beyond improvement in

employee health and morale . . . ."

We first address the compensation judge's determination that the injury

was not compensable under the Act because it resulted from a recreational

activity that did not "produce a benefit to the employer beyond improvement in

employee health and morale . . . ."  N.J.S.A. 34:15-7.  He found the Cardio Club

was started "to engage the community and help promote healthier living.  That

was and remains its only purpose."[1]  Therefore, participation in Cardio Club

"failed to have the requisite 'work connection' necessary to bring the incident

within [the] purview of [the Act]."  We disagree and find that the recreational

and social activity exception is not applicable.

---

[1]  As to petitioner and other staff, this voluntary cardiovascular program was designed to promote their "health and morale," by improving their physical fitness.

11

Petitioner argues that the Cardio Club also served to improve the participating students' math skills. She relies on language on the school's district's website that described the program as an "Early Morning Math-Infused Cardio Club" where students, "parents, and staff members are invited to participate." The website stated that Abraham introduced the Cardio Club "to kick the day off with a series of fitness activities to create an optimal condition for learning." Abraham created the club, which infuses math into fitness activities such as "calisthenics, tire pushing/pulling repetitions, cardiovascular endurance exercises, and dynamic stretching and plyometric sets." The website mentions that during a recent session, students ran outside and "calculate[ed] pace and clock[ed] sprint times." The website further stated:

> The Hoboken Middle School Cardio Club is not a typical fitness course. The Cardio Club employs a multidisciplinary approach, infusing an array of [m]athematics concepts and content into physical exercises and drills. Through its innovative design, students use math skills to evaluate and adjust their personal fitness goal on a fitness app. Early morning runs are mapped using GPS technology. Students also chart every step that they take, monitor their heart rate, and calculate their VO2 max. While this is taking place, math vocabulary and concepts are reinforced.

As emphasized on the website, there was an academic aspect to the Cardio Club, which was designed to infuse mathematical concepts into the

12

cardiovascular exercises the students performed. The Cardio Club was not limited to promoting the students' "health and morale."

The nature of petitioner's activities at Cardio Club determines compensability. <u>Goulding</u>, 245 N.J. at 174. The Court explained:

> Under the plain language of [N.J.S.A. 34:15-7], an injury "arising out of and in the course of employment" is not compensable if it is sustained during "recreational or social activities." N.J.S.A. 34:15-7. Accordingly, when a claim is pressed and an employer defends against the claim by asserting that the employee was injured during a "recreational or social activit[y,]" a court must first consider whether the activity was, in fact, "recreational or social" within the meaning of the statute. If the activity was not recreational or social in nature, then the employer may not invoke that exception to compensation.
>
> If, on the other hand, the activity during which the injury is sustained was recreational or social in nature, N.J.S.A. 34:15-7 provides that the injury will only be covered if "such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale." Put differently, "an employee injured during a recreational or social activity must satisfy a two-prong test to qualify for compensation under the [A]ct -- the activity (1) must be a 'regular incident of employment,' and (2) must 'produce a benefit to the employer beyond improvement in employee health and morale.'" [<u>Lozano v. Frank DeLuca Constr.</u>, 178 N.J. 513, 521 (2004)] (quoting N.J.S.A. 34:15-7).
>
> [<u>Id.</u> at 171.]

13

Petitioner's voluntary participation in the Cardio Club was not a "regular incident of employment" as a school nurse. N.J.S.A. 34:15-7. It was not part of her job duties, did not involve performing services as a nurse, and was not compulsory. Petitioner did not "volunteer[] to help facilitate" the Cardio Club. Goulding, 245 N.J. at 174. Nor was she "facilitating" the Cardio Club by performing services for students "just as she does in her regular employment." Ibid. On the contrary, her participation was limited to exercising.

Petitioner was not performing her job duties as a nurse while voluntarily participating in cardiovascular exercise at Cardio Club. In contrast, the petitioner in Goulding was performing her regular job duties as a cook at an event that benefitted the employer's clients when injured and was not participating in a "social or recreational role." Id. at 174. Nevertheless, because the Cardio Club was "designed with the purpose of benefitting" the participating students academically, by improving their math skills, the club "cannot be deemed a social or recreational event as to that employee." Ibid. Accordingly, the Cardio Club was not a social or recreational activity within the meaning of N.J.S.A. 34:15-7. Ibid.

We next address the compensation judge's determination that petitioner's injury did not "arise out of" her employment and was not compensable because

14

it "failed to have the requisite 'work connection' necessary to bring this incident within [the] purview of our Workers' Compensation Act."

The compensation judge determined that petitioner's injury occurred "in the course of employment," noting that pursuant to N.J.S.A. 34:15-36, employment "commence[s] when an employee arrives at the employer's place of employment to report for work . . . ."

The compensation judge then analyzed whether petitioner's injury arose out of her employment and had the requisite "work connection." The record demonstrated that petitioner is a school nurse not a teacher. Her job duties were to perform health screenings, treat illnesses, make referrals to primary care providers, and monitor immunizations. She acknowledged she was not performing any of her duties as a school nurse at the Cardio Club. Nor is there any evidence in the record that petitioner discussed mathematical concepts with students or assisted students in any math-related activities during Cardio Club. Petitioner was not monitoring, supervising, instructing, or otherwise assisting the student participants. Abraham supervised the students, not the participating staff members. Petitioner's participation at Cardio Club was limited to engaging in cardiovascular exercise. It was not a "regular incident of employment" as a school nurse within the meaning of N.J.S.A. 34:15-7.

A-0656-20

The compensation judge found "there was no connection between [petitioner's] job, either as a school nurse, or as a monitor for the [A.M. Care program] and her activities of running a relay race in the school gymnasium." "Second, given her interest in personal health, her proclivities in running and other types of races, her desire to lose enough weight to earn $661," the compensation judge found that "it is not more probable that this injury would have occurred during a time and place of employment rather than elsewhere." Petitioner was motivated to exercise and worked out at least twice a week at a fitness center.

The compensation judge further found:

> At the time and place of the accident, [petitioner] was not doing her job, either as a school nurse, morning aide, or supervisor. She was engaged in an activity that was so unlike her previous day's work, that any reasonable person in similar circumstances would have diligently inquired if [Cardio Club] was actually part of the [A.M. Care] job.

He noted that petitioner testified that she was approved to exercise shortly after giving birth.

> She also said that she had a personal health goal to lose 30 pounds by Christmas, and by doing so she would earn $661. She admitted that there was a personal stake in getting healthy, and that she enjoyed [sic] working out. She went on to say that she worked out whenever she could, even engaging in 5K races while pregnant

16

and after her pregnancy came to term . . . She thought [Cardio Club] would be "fun" and chose to do it.

The compensation judge characterized petitioner's participation in the Cardio Club as voluntary physical exercise. Petitioner "chose to participate in the Cardio Club." There was no testimony "that even hinted that this was required or that it was 'frowned upon' if one failed to participate." Notably, only about five of the forty-five staff members at the Middle School attend this voluntary program, yet no one is reprimanded for not participating. The compensation judge concluded that neither petitioner's reluctance "to say 'no' to her new boss" nor her intent to work at A.M. Care when she went to work that day were dispositive.

The compensation judge's findings that petitioner's injury did not "arise out of" her employment and "failed to have the requisite 'work connection'" are adequately supported by credible evidence in the record and consonant with the Act. Given our deferential standard of review, we discern no basis to disturb the dismissal of petitioner's claim for temporary disability and medical benefits.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION