277 N.J. Super. 506 (1994)
649 A.2d 1333
CARLO G. CELLUCCI, JR., AND SALLY CELLUCCI, PLAINTIFFS-APPELLANTS,
v.
RONALD W. BRONSTEIN, AND NUSBAUM, STEIN, GOLDSTEIN AND BRONSTEIN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1994.
Decided December 6, 1994.
*508 Before Judges MUIR, Jr., D'ANNUNZIO, and EICHEN.
Robert A. Vort argued the cause for appellants (James F. Carney, attorney; Mr. Vort, of counsel and on the brief).
Christopher J. Carey argued the cause for respondents (Tompkins, McGuire & Wachenfeld, attorneys; Mr. Carey, of counsel; Mr. Carey and Nadia M. Walker, on the brief).
The opinion of the court was delivered by MUIR, Jr., J.A.D.
This appeal stems from an order granting defendants' motion for involuntary dismissal of plaintiffs' legal malpractice complaint at the close of all evidence. The underlying theory of plaintiffs' complaint was that defendant Ronald Bronstein not only negligently filed a workers' compensation petition rather than a negligence action against Bud's Bar & Liquor, Inc., thereby diminishing the scope of recoverable damages, but also negligently advised plaintiffs to settle the compensation petition resulting in even greater minimizing of recoverable damages. On appeal, plaintiffs essentially argue their proofs, considered in the context of Dolson *509 v. Anastasia, 55 N.J. 2, 5-6, 258 A.2d 706 (1969), require reversal of the order. We affirm.
The appeal has two central facets. One focuses on the exclusivity of the Workers' Compensation Act as redress for a claim by an employee and whether plaintiff Carlo Cellucci, Jr., was an employee who sustained his injuries in an accident arising out of and in the course of employment. The other focuses on whether, when viewed in the context of Dolson's dictates, plaintiffs, through their expert, presented a jury issue on whether Bronstein negligently handled the compensation petition settlement.

I.
We begin by noting that while under Dolson we must accept as true all evidence that supports plaintiffs' position, there is no dispute as to the facts.
Plaintiff Carlo Cellucci, Jr. (Carlo) is the son of Carlo Cellucci, Sr. (Mr. Cellucci) and his wife, Marian Cellucci. The senior Celluccis at times pertinent owned all the stock in Bud's Bar & Liquor, Inc., which operated a bar and package liquor store near Branchville, New Jersey. The senior Celluccis acquired the business around 1976. They also own, in their own names, a home at Lake Owassa, a lake community in Sussex County not far from the bar-store location.
When the bar was first purchased by his parents, Carlo, along with his mother, operated the bar full-time for approximately six months until his father took over operation in 1977. Thereafter, Carlo continued to work at the bar on a part-time basis until the time of the accident. During that time Carlo would either stop at the bar or his father would contact him to set hours, if any, to be worked the coming week. For several years prior to the accident, Carlo also operated a landscaping business.
On August 22, 1982, as it had for the prior five years, Bud's Bar hosted for its customers and friends a picnic at the Celluccis' Lake Owassa home. Also, as it had done in the prior five years, Bud's *510 Bar hired Carlo to assist at the picnic. In 1982, prior to the picnic, Carlo had worked at the bar-store between 100 and 150 hours. His responsibilities at the bar-store included bartending, selecting beer for sale, selling package goods, and stocking shelves. Carlo acknowledged his employment was "regular-irregular" and on occasion while bartending he would drink a beer with a customer.
Mr. Cellucci and Carlo provided the information on the scope of Carlo's work at the picnic. Mr. Cellucci, in a statement given to Bronstein, stated Carlo was employed part-time by Bud's Bar at the time of the accident. As reflected in various proceedings and this proceeding,[1] Mr. Cellucci said Bud's Bar hired Carlo at $4 per hour. Mr. Cellucci directed Carlo to bring tables, chairs, beer, whiskey, and soda to the lake; to set up the tables, chairs, beer (at least two kegs), whiskey, other alcoholic beverages, and food; and to act as a host to all the guests, which included directing the guests to the food and drink, but later socializing with the guests, including participating in volleyball, horseshoes, and swimming. During a deposition, Mr. Cellucci answered "Yes" to the question, "Did you consider the fact that he was out swimming in the lake, did you consider that part of the things that you hired him for?" Then in response to a question, "You hired him to swim?" Mr. Cellucci answered, "If you want to put it that way, yes.... And to mingle with the guests. If that meant swimming or playing horseshoes with a couple of his cronies, fine." Carlo testified that he was responsible for making sure all food and drink was set out and that initially he would serve guests their first drink and show them how to help themselves. Later, plaintiffs' liability expert admitted it was "true" that Carlo "was employed, was in the *511 course of his employment and was allowed to go swimming as part of his employment." He conceded there was no dispute as to those facts. The proofs also indicated Carlo was free to consume alcoholic beverages if he chose to do so.
Carlo testified to his consumption of alcoholic beverages that August day. He initiated his drinking around 2 p.m. He drank 15 to 20 seven- to eight-ounce containers of beer  the equivalent of a little more than one-half case of twelve-ounce cans of beer. Later in the day, between approximately 4:30 and 6:45 p.m., Carlo also consumed 4 one-ounce shots of "Schnapps."
About fifteen minutes after he drank the last "Schnapps," Carlo went out to a dock fronting on his parents' property and dove into the lake. Carlo described the catastrophic dive as "shallow" followed by "like instant loss of power." Carlo later acknowledged he had successfully accomplished a dive at the same place just two weeks earlier, a dive he admitted he had made hundreds of times when sober. He also acknowledged he was very familiar with the lake. He knew the water was only three and one-half to four feet deep and knew the lake contained rocks "as big as [his] head." Moreover, he was a Red Cross trained senior lifeguard who knew not only that diving into shallow water could be dangerous but that it "makes sense" that consumption of alcohol before swimming could be hazardous.
The local rescue squad took Carlo to the hospital. A blood alcohol test rendered a .322 reading. Subsequent examination disclosed a fractured neck that caused quadriparesis (total paralysis of both legs and extensive paralysis in both arms).
Carlo and his wife and his parents first met with Bronstein September 1, 1982, during Carlo's hospitalization. Carlo testified Bronstein was recommended to him as a "Workman's Comp lawyer" by the bar's insurance agent.
Plaintiffs called Bronstein as a witness for their malpractice claim. Bronstein testified to the events and reasons for filing the compensation petition. All present at the hospital represented *512 that Carlo was a part-time employee of the bar and that Carlo was permitted to swim as part of his work at the picnic. After listening to the Cellucci family, which did not disclose Carlo's alcohol consumption that day, Bronstein concluded, "we [have] a very, very good Workers' Compensation case." He was satisfied the accident arose out of and occurred during plaintiff's employment by Bud's Bar. At the time Bronstein also was unaware of the .322 blood alcohol reading.
Recognizing the serious need to get mounting medical bills paid, Bronstein immediately filed a claim petition. He did it promptly "[t]o obtain temporary disability and medical treatment in the form of getting the bills paid."
A month after the first meeting with plaintiff, Bronstein learned of the hospital record disclosing the .322 blood alcohol reading. Later in a deposition for use in compensation court, Carlo admitted to the heavy drinking. Confronted with Carlo's alcohol consumption, the .322 reading, and now aware that (1) Carlo had made the same dive hundreds of times without sustaining injury, (2) Carlo knew the lake was 3 1/2 to 4 feet deep with rocks the size of his head on the bottom, and (3) Carlo had Red Cross senior lifesaving training, Bronstein saw the success of the compensation claim made seriously questionable under the compensation law and this court's ruling in Anslinger v. Wallace, 124 N.J. Super. 184, 305 A.2d 797 (App.Div.), certif. denied, 63 N.J. 552, 310 A.2d 467 (1973).
N.J.S.A. 34:15-7 excludes otherwise compensable injuries when intoxication is the natural and proximate cause of the injuries for which coverage is sought. See Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495, 75 A.2d 557 (Cty.Ct. 1950), aff'd sub nom., Bujalski v. Flockhart Foundry Co., 16 N.J. Super. 249, 84 A.2d 468 (App.Div. 1951), certif. denied, 8 N.J. 505, 86 A.2d 321 (1952). In Anslinger we held the bar applied because the employee's voluntary intoxication, demonstrated by, among other things, a .312 blood alcohol reading, was the sole cause of an automobile accident that led to the employee's death. See Anslinger v. Wallace, *513 supra, 124 N.J. Super. at 186-87, 305 A.2d 797; see also N.J.S.A. 34:15-7.
After four days of hearings and after a conference with the compensation judge that reflected a potential unfavorable disposition of the case because of the intoxication, Bronstein reassessed the case and concluded Carlo's intoxication was the sole cause of the accident which caused the quadriparesis. As he maintained at trial, he reached that conclusion when he viewed the very high blood alcohol reading in the context of Carlo's extensive experience in making the same dive, his knowledge of the lake's depth and rock dangers, and his Red Cross training. Viewed in that perspective, Bronstein concluded voluntary intoxication was the only explanation for the occurrence of the accident. In essence, based on the relevant facts and applicable law, he concluded the specific hazard involved in the accident did not exist for a sober Carlo as it did for an intoxicated Carlo. See Anslinger v. Wallace, supra, 124 N.J. Super. at 188, 305 A.2d 797.
Bronstein testified he did not attempt to refute the .322 blood alcohol because it was consistent with the amount of alcohol Carlo admitted drinking that day and because the family members who said Carlo was not intoxicated were not paying close attention to him at the picnic  a fact Mr. Cellucci admitted during trial. With the reassessment of the case and the compensation judge's comments, Bronstein concluded the case would be dismissed unless it could be settled.
Bronstein negotiated a settlement. The terms called for Carlo to receive $10,000 and $85 per week for the rest of his life, with his wife to receive any payment due under a 20-year guaranty if Carlo had an early demise. The settlement relinquished entitlement to reimbursement for all past, present, and future medical bills (stipulated to be approximately $113,000 at time of trial). Bronstein told plaintiffs "what they were giving up" and "what they were receiving in return." He advised plaintiffs if they litigated the case to successful conclusion, Carlo's benefits would be $112 a week for the rest of his life and full payment of any and *514 all medical bills. Although he recommended settlement, he advised plaintiffs it was their decision. Plaintiffs agreed. Carlo relied on Bronstein's recommendation in making the decision.
The parties placed the settlement on the record. The compensation judge opened that process stating, "Now, gentlemen, we've been at trial four full days prior to today. I understand at this point there's a suggestion of a Section 20 [N.J.S.A. 34:15-20] disposition." Later the judge stated, "There's no question in my mind that there is a very serious issue of liability in this case and it would lend itself to a Section 20 [settlement] consideration." Carlo then acknowledged all terms of the settlement, his understanding of the settlement, and his acceptance of it. The compensation judge then approved the settlement.
Bronstein signed a settlement agreement on Carlo's behalf. In it Carlo agreed to a "full discharge of past, present and future claims arising out of the allegations set forth in Plaintiff's complaint ... and in further full and complete discharge of any wrongful death claims that could be asserted in the future by said Plaintiff, Carlo Cellucci, or his heirs, as a result of the alleged actions or omissions of the Defendants...." The release further provided it "shall apply to all claims, whether known or unknown, on the part of all parties to this Agreement...." Carlo also agreed to "execute any and all Releases prepared by Defendants' attorneys which are not inconsistent with the basic term of this Agreement...."
Concluding Bronstein's liability for malpractice rested on expert testimony, plaintiffs offered the testimony of Michael Ambrosio. A law school professor for 23 years and a lawyer for 25, Ambrosio opined that Bronstein committed legal malpractice in handling plaintiffs' representation.
Ambrosio began his testimony with an exposition on how to handle a serious injury case. Highlighting the catastrophic nature of Carlo's injury as the primary consideration for all decisions by counsel, Ambrosio opined:

*515 Only in the event if there's no basis for a negligence claim would you resort to a Worker's Compensation claim and you would hope to have both the Worker's Compensation claim as well as the negligence claim, but if it's a choice between a negligence claim and a Worker's Compensation claim and you should discuss that fully with the client and give the client all the information for the client to make the decision as to whether or not to forego the Worker's Compensation claim and the certain recovery, and to proceed on the basis of a negligence claim.
Later, Ambrosio gave some further enlightenment to the philosophical foundation which supported his malpractice opinion.
There's an obligation ... at the outset when you have a person who have [sic] catastrophic injuries to discuss every conceivable theory and cause of action and every possible difficulty and explore to the nth what basis there is to file a lawsuit, even if you're not sure you're going to win any of those lawsuits because those lawsuits have significant settlement value because of the possibility of $5 million or some large sum of money being awarded.
While he agreed that there is no deviation from accepted standards of legal practice when a lawyer in good faith relies and acts on facts that his client gives to him, he later stated he "wouldn't care what a client says about any facts if those facts are susceptible to [his] judgment." As part of his overall theory, he espoused the premise the greater the injury, the more lawsuits you should consider.
While he conceded the indisputable evidence on scope and nature of employment and on the injury occurring in the course of employment as previously noted, Ambrosio believed that it was malpractice not to file a negligence action against Bud's Bar given the fact that greater recovery and settlement potential existed in negligence actions. He maintained a negligence action had merit because the facts disclosed Bud's Bar was developing business the day of the picnic when it made unlimited quantities of alcohol available creating a reasonable risk someone would dive into the lake and injure himself or herself as Carlo did. He found additional negligence grounds in the premise that to preclude foreseeable harm a reasonable person under the circumstances would have taken "the simple precaution to take [the] removable dock [from which Carlo dove] from the lake as to avoid the possibility that someone would dive off of that dock" and injure himself or *516 herself. He found Bronstein negligent in failing to reach the same conclusion.
Ambrosio also opined a very strong argument could be made that Carlo was not an employee at the time of the injury and that the injury did not arise in the course of employment. He maintained the one-day job made Carlo a casual employee, hence, not covered by the compensation law. See N.J.S.A. 34:15-36. He also insisted Carlo's swimming was not a recreational or social activity that was an incident of employment. Thus, he concluded "this was a negligence case against the bar and not a Worker's Compensation case against the bar."
Turning to the handling of the compensation case, he maintained Bronstein committed malpractice when he advised Carlo to settle. Ambrosio also contended agreeing to the release terms in the settlement agreement was malpractice because it precluded the filing of any subsequent negligent actions against Bud's Bar. Contrary to Bronstein's reasoning, he found the Anslinger decision supported a conclusion Carlo's intoxication was not the sole proximate cause of the accident. He found succor for this reasoning in the conclusion that the shallow, rock infested lake and the failure to remove the dock were concurrent causes of the accident.
Ambrosio identified the essence of his malpractice claim that Bronstein improperly assessed the facts in the context of Anslinger, supra, when he expounded:
In this case there's ample evidence of other causes of the injury, so I think he was wrong in making that judgment and certainly, as a specialist in Worker's Compensation, for him to conclude that the intoxication was a potential bar to recovery and a reason for settling for less on the Worker's Compensation case, I think that is clearly contrary to the standard of care he owed his client.
[emphasis added]
Later Ambrosio testified, "I don't see how [Bronstein] could conclude that intoxication defense was really a problem."
Ambrosio also believed the release in the settlement agreement constituted malpractice. Pointing to the breadth of the language, he asserted it improperly and unnecessarily foreclosed further common law negligence litigation against Bud's Bar. To bolster *517 his contention, he pointed to the subsequently settled negligence action in which Bud's Bar became a direct defendant after being designated as a third party by other defendants.
In granting defendants' motion for involuntary dismissal, the trial court ruled there could be no dispute among reasonable jurors that Carlo was an employee of Bud's Bar who injured himself in an accident arising out of and in the course of employment. Thus, given the exclusivity of the Workers' Compensation Act, the court found no merit to the claim of malpractice in either the failure to file a negligence claim or in the release signed on Carlo's behalf.
On the claim of malpractice for advising settlement of the compensation claim, the court concluded there could be no dispute Bronstein properly advised his client. In reaching that conclusion, the court reasoned the clear tenor of Carlo's knowledge and experience with diving at the lake and with water safety, when assessed with Carlo's drinking and blood alcohol reading, projected a conclusion intoxication was the sole cause of the quadriparesis. In so doing, the court distinguished Ziegelheim v. Apollo, 128 N.J. 250, 607 A.2d 1298 (1992). This appeal ensued.

II.
We turn first to plaintiffs' contention the trial court erred by improperly preempting jury consideration of Ambrosio's opinion that the facts sustained a viable negligence cause of action against Bud's Bar rather than a workers' compensation claim. By focusing on the deference a trial court must give expert opinion in an involuntary dismissal context, plaintiffs overlook the undisputed facts Ambrosio so facilely ignored under his "susceptible to [his] judgment" theory. Those facts established an employer-employee relationship existed between Carlo and Bud's Bar for the purposes of the Workers' Compensation Act, which precluded the filing of any negligence action.
The Workers' Compensation Act is an exclusive remedy for employees injured in covered accidents. It affords an expeditious *518 remedy for employees and at the same time makes the employer absolutely liable in a limited and determinable manner. Wilson v. Faull, 27 N.J. 105, 116, 141 A.2d 768 (1958). In exchange for the absolute liability imposed on the employer, the Act grants immunity from common law negligence suits by employees. Ibid. Thus, Bronstein could be guilty of malpractice in failing to file a negligence action only if Carlo was not an employee and/or did not sustain the injury in an accident arising out of and in the course of employment.
N.J.S.A. 34:15-36 defines employee for the purposes of a workers' compensation claim. In pertinent part, the statute provides:
synonymous with servant ... includes all ... persons ... who perform service for an employer for financial consideration, exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic or recurring....
To begin with, Carlo met the primary requirement to be an employee  he performed service for an employer for financial consideration. His disqualification for compensation coverage by N.J.S.A. 34:15-36 definition rests on whether he was a casual employee.
The late Chief Justice Weintraub confronted the issue of what constituted casual employment in Graham v. Green, 31 N.J. 207, 211, 156 A.2d 241 (1959) (citation omitted). There he noted:
Lexicographers define "casual" to mean "1. Happening or coming to pass without design, and without being foreseen or expected; coming by chance. 2. Coming without regularity; occasional; incidental." Its antonyms are regular, systematic, periodic and certain.
He then instructed the statutory definition "is even more confining, for it does not exclude all casual business employments merely because they are brief and passing, but rather excludes only such brief employments as result from an occasion arising by chance or pure accident." Ibid.
The undisputed proofs of Carlo's employment had none of the statutory vestiges of casual employment. Carlo worked on a regular basis for Bud's Bar, albeit part-time. In 1982, prior to the *519 accident, the time spent amounted to between 100 and 150 hours. His employment at the picnic was neither chance nor pure accident. As an element of his part-time employment, he had worked at the picnic each of the prior five years performing the same functions. Those functions, to a certain degree, paralleled his duties at the bar-store: stocking the picnic with alcoholic beverages as he stocked the package good store and serving, at least initially, the picnic guests as he served beer and other alcoholic beverages at the bar. Thus, Carlo's employment had uncontroverted facets of being regular, systematic, periodic, and certain even though part-time. Against that background and mindful that policy considerations demand liberal construction of the Workers' Compensation Act so as to favor coverage of an injured claimant, we rule the trial court properly determined there was no jury issue for consideration; Carlo was clearly an employee of the bar at the time of the accident.
That notwithstanding, there is an assertion the swimming constituted a recreational activity that did not satisfy the dictates of N.J.S.A. 34:15-7. The statute excepts employee recreational activity from compensation coverage unless it is a regular incident of employment and produces a benefit to the employer beyond improvement in employee health and morale. See Sarzillo v. Turner Constr. Co., 101 N.J. 114, 119, 501 A.2d 135 (1985). It is undisputed Mr. Cellucci authorized Carlo to participate in swimming as part of the picnic day employment. There is no suggestion it was not part of his regular duties at the annual picnics. The swimming went beyond Carlo's health and morale. Its design was to assist the guests' enjoyment of the picnic with the obvious object of promoting the bar's interest  an interest Ambrosio recognized in his testimony. Consequently, the undisputed evidence refuted any jury question that the swimming did not arise out of or in the course of the employment.
In sum, we rule the trial court properly concluded there was no jury issue on Bronstein's failure to file a negligence action against Bud's Bar. The uncontroverted proof so readily discarded by *520 plaintiffs' expert demonstrated Carlo had an employer-employee relationship for purposes of the Workers' Compensation Act. The exclusive nature of that Act precluded any common law negligence claim being filed by Carlo. Our ruling also vitiates any malpractice claim based on the release. In our view, the Workers' Compensation Act controls and precludes institution of any employee negligence action at any time.

III.
We now consider whether the trial court erred in granting defendants' involuntary dismissal motion on the claim of negligence in advising settlement of the compensation claim. Plaintiffs rely on Ambrosio's opinion that Bronstein negligently construed the facts in light of the applicable law because concurring causes of Carlo's accident precluded an opinion that his voluntary intoxication was the sole cause of the accident. See Anslinger v. Wallace, supra. They argue Dolson v. Anastasia, supra, 55 N.J. at 5, 258 A.2d 706, required the court to accept Ambrosio's opinion as true and to allow jury consideration of the issue. We disagree. Dolson is not controlling because Ambrosio not only applied a standard of care for determining legal malpractice that exceeds recognized legal standards but also utilized a flawed analysis of the applicable law to support his conclusion legal malpractice occurred.
Like many legal malpractice actions, this case took on the appearance of a trial within a trial. See Lieberman v. Employer's Ins. of Wausau, 84 N.J. 325, 342, 419 A.2d 417 (1980). It explored what the outcome of the compensation case would have been if Bronstein had concluded intoxication was one of the concurring causes rather than the sole cause of the accident. It entailed Ambrosio's assessment of Bronstein's judgment and Ambrosio's conclusion the lawyer committed malpractice in his analysis of the facts under existing case law that led to the settlement recommendation. To that extent, it was not a replication of the compensation court proceeding so as to create a jury question of whether *521 Carlo's voluntary intoxication was indeed the sole cause of the accident. Cf. Black v. Public Serv. Elec. & Gas Co., 56 N.J. 63, 88, 265 A.2d 129 (1970). Instead, the case focused on Ambrosio's opinion that affixed a malpractice label to Bronstein's judgment that Carlo's voluntary intoxication created a "potential" the compensation claim would be dismissed. The opinion hypothesized the compensation judge would not have concluded intoxication was the sole cause of the accident and would have awarded maximum compensation benefits instead of those received under the settlement. Alternatively, it hypothesized if the judge had not so ruled, an appellate court would have. As such, plaintiffs' claim rested on Ambrosio's opinion that Bronstein deviated from the standard of care governing lawyer competence in this state.
The controlling standard of care is not in dispute. Perhaps the most definitive articulation of the standard comes from McCullough v. Sullivan, 102 N.J.L. 381, 384, 132 A. 102 (E. & A. 1926):
A lawyer, without express agreement, is not an insurer. He is not a guarantor of the soundness of his opinions, or the successful outcome of the litigation which he is employed to conduct, or that the instruments he will draft will be held valid by the court of last resort. He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice. He does, however, undertake in the practice of his profession of the law that he is possessed of that reasonable knowledge and skill ordinarily possessed by other members of his profession. He contracts to use the reasonable knowledge and skill in the transaction of business which lawyers of ordinary ability and skill possess and exercise. On the one hand he is not to be held accountable for the consequences of every act which may be held to be an error by a court. On the other hand, he is not immune from the responsibility, if he fails to employ in the work he undertakes that reasonable knowledge and skill exercised by lawyers of ordinary ability and skill. The duties and liabilities between an attorney and his client are the same as those between a physician and his patient. Both the attorney and physician are required to exercise that reasonable knowledge and skill ordinarily possessed and exercised by others in their respective professions.
As we noted recently in 2175 Lemoine Ave. v. Finco, Inc., 272 N.J. Super. 478, 486, 640 A.2d 346 (App.Div. 1994), the standard is applied by our courts today. See, e.g., Ziegelheim v. Apollo, supra, 128 N.J. at 260-61, 607 A.2d 1298; St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571, 588, 443 A.2d 1052 (1982); Gautam v. De Luca, 215 N.J. Super. 388, 396, 521 A.2d *522 1343 (App.Div. 1987). While the recited criteria make no reference to the circumstance where, as here, a lawyer holds himself or herself out to be a specialist in a field of law, they are readily modifiable to such circumstance. The modification is that a lawyer holding himself or herself out as a specialist in an area of law must exercise the knowledge and skill ordinarily possessed by other specialists in the same area of the law. See Ronald E. Mallen & Victor B. Levit, Legal Malpractice § 253 (2d ed. 1981).
With these principles in mind, we conclude the trial court was correct in granting the motion. Ambrosio's opinion is untenable. It finds a lawyer liable for an exercise of judgment, not for a deviation from the knowledge and skill of a compensation court practitioner. Ambrosio deemed Bronstein negligent because he recommended settlement of the case. In that regard, as previously noted, Ambrosio stated:
In this case there's ample evidence of other causes of the injury, so I think he was wrong in making that judgment and certainly, as a specialist in Worker's Compensation, for him to conclude that the intoxication was a potential bar to recovery and a reason for settling for less on the Worker's Compensation case, I think that is clearly contrary to the standard of care he owed his client.
[emphasis added]
The clear tenor of this statement is that Bronstein's error in judgment constituted malpractice. Yet, as noted, that is not a standard that exposes a lawyer to liability in his representation of a client under the circumstances here. If it were, no lawyer could recommend settlement of a case without being liable either for the settlement or, in the event of an adverse verdict, for failure to settle.
When honed to its essentials, the infirmities of Ambrosio's opinion become obvious. Ambrosio did not fault Bronstein for the lack of requisite knowledge of the law. Neither did he fault Bronstein for considering certain clearly relevant facts: (1) the.322 reading; (2) Carlo's prior experience with having dived hundreds of times successfully without injury; (3) Carlo's knowledge of the lake's shallowness and dangers; and (4) Carlo's knowledge of water safety and knowledge of the dangers created by mixing drinking and diving into Lake Owassa. Instead, he *523 faulted Bronstein for an error in judgment based on a flawed analysis of applicable law.
Ambrosio faulted Bronstein for failing to find concurrent causes existed in the shallowness of the lake, its rocky bottom, and failure to remove the dock. The fallacy of Ambrosio's opinion is that such arguments were for the compensation judge; and while we have some, though no clear, indication how the judge would have ruled, the reasoning ignores a comparable argument raised in Anslinger. In Anslinger the petitioner claimed that a collision between the employee's vehicle and the rear of a truck was a concurrent cause of the accident that led to the employee's death. We rejected the argument given the employee's highly intoxicated state. See also Kulinka v. Flockhart Foundry Co., 9 N.J. Super. 495, 505, 75 A.2d 557 (Cty.Ct. 1950) (if the employment supplies no more than "the setting, the stage, the situation in which the [injury] occurred," then the employee's intoxication is the sole producing cause). Simply put, Ambrosio ignored Anslinger's instruction that overwhelming evidence of intoxication, here a .322 blood alcohol reading, precludes a finding of other concurrent causes. Ambrosio further ignored the tenet in Anslinger, one obviously relied upon by Bronstein, that the specific hazards giving rise to Carlo's injury did not exist for a sober Carlo as they did for an intoxicated Carlo. See Anslinger, supra, 124 N.J. Super. at 188, 305 A.2d 797. In this regard, Ambrosio based his contention of legal malpractice on a fallacious analysis of the law.
In sum, the common law of this state does not make a lawyer liable for an errant exercise in judgment when representing a client so long as the lawyer demonstrates a reasonable knowledge of the law and applies it to relevant facts. Ambrosio's opinion ignored those tenets. He applied not only a fallacious standard of care, but also his construction of Anslinger was so flawed that it could not properly serve as a basis for concluding Bronstein did not demonstrate a reasonable knowledge of the law in recommending settlement of the compensation claim.
We do not read Dolson, in the circumstances here, to dictate the trial court should have denied defendants' motion. We recognize *524 that normally, because the issue of whether an attorney has complied with a standard of care is one of fact, an expert opinion of negligence in a legal malpractice action suffices to create a jury question. Cf. Ziegelheim v. Apollo, supra, 128 N.J. at 264, 607 A.2d 1298. But neither Ziegelheim, which is substantially distinguishable from this case, nor any reported decision in this state holds a jury question exists when the expert's opinion has the flaws of Ambrosio's. The opinion here projected errant assessments of law, something well within the ken of the trial court. A lawyer's liability for malpractice cannot be established on an expert's premise of "I know it when I see it." It has to be premised on recognized standards of care that repose liability for deviations from those standards. It was not so premised here.

IV.
Finally, we reject as without merit other contentions raised by plaintiffs. R. 2:11-3(e)(1)(E). We are satisfied the trial court properly granted the motion to dismiss.
Affirmed.
NOTES
[1] The subject litigation was one of three actions instituted by plaintiff(s). Another was the workers' compensation case. The third was a Superior Court action against the Lake Owassa Owners' Association and the senior Celluccis. Brought by counsel now representing plaintiffs, the Superior Court proceeding, which ultimately settled, included Bud's Bar as a direct defendant. Plaintiffs made Bud's Bar a defendant after it was made a third-party defendant by the Owassa Association and the Celluccis.