NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0177-15T4

RANDY B. ROSENBLATT,

 Plaintiff-Appellant,

v.

VINCENT STRIPTO, ESQ., AND
DRAZIN & WARSHAW, P.C., HOWARD
BACHMAN, ESQ. AND GOLDSTEIN &
BACHMAN, ATTORNEYS AT LAW,

 Defendants-Respondents.
___________________________________

 Submitted January 18, 2017 – Decided August 2, 2017

 Before Judges Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Monmouth County, Docket
 No. L-12-13.

 Ginsberg & O'Connor, P.C., attorneys for
 appellant (Gary D. Ginsberg and Stephen P.
 Burke, Jr., on the brief).

 Giordano, Halleran & Ciesla, P.C., attorneys
 for respondents Vincent Stripto and Drazin &
 Warshaw, P.C. (Michael J. Canning, of counsel;
 Mr. Canning and Matthew N. Fiorovanti, on the
 brief).

 Kaufman Dolowich & Voluck, LLP, attorneys for
 respondents Howard Bachman and Goldstein &
 Bachman, Attorneys at Law (Iram P. Valentin,
 of counsel; Mr. Valentin and David J.
 Gittines, on the brief).

PER CURIAM

 In this attorney malpractice case, we review the trial court's

requirement that plaintiff provide expert testimony to establish

proximate cause. Plaintiff Randy Rosenblatt sued two of her former

divorce attorneys and their respective law firms, Vincent Stripto

of Drazin & Warshaw, P.C., and Howard Bachman of Goldstein &

Bachman. Plaintiff alleged that the two failed to notify her that

she might have a Tevis claim, which negatively affected the outcome

of her divorce. The trial court concluded that expert testimony

was necessary to prove proximate causation, and eventually granted

summary judgment for defendants once it became clear that plaintiff

had not offered such testimony.

 On appeal, plaintiff challenges the court's evidentiary

ruling and the entry of summary judgment. We affirm.

 I.

 Bachman succeeded Stripto as plaintiff's divorce attorney.

Stripto began representing plaintiff in 2000. He filed and then,

at plaintiff's request, withdrew complaints on her behalf in 2000,

2001 and 2002. The following year, he filed the complaint that

was later amended and ultimately litigated. Stripto also

represented plaintiff in a related domestic violence action, which

 2 A-0177-15T4
resulted in a January 2004 final restraining order (FRO) against

her husband.

 Plaintiff substituted Bachman for Stripto later that year.

During Bachman's representation, plaintiff and her husband agreed

to binding arbitration of their divorce case. Plaintiff discharged

Bachman in 2006 after receiving the arbitration decision.

 In November 2007, after consulting with another attorney,

plaintiff claimed she discovered for the first time that she had

a potential marital tort claim against her husband under Tevis v.

Tevis, 79 N.J. 422 (1979).1 The potential claim related to three

altercations in 2002, 2003 and 2004. She alleged that in 2002,

her husband grabbed her arm so firmly it left a black and blue

mark that lasted a week; in 2003, he pushed her against a wall,

causing short-lived pain to her neck and one of her hands (she

could not recall which); and in 2004, he butted heads with her in

the midst of an argument.

 She contended neither Stripto nor Bachman ever informed her

that she had a potential tort claim, which was now barred.

Plaintiff filed her legal malpractice action on December 28, 2012,

1
 Stripto and his law firm contested this assertion during
discovery, stating that another attorney at Drazin & Warshaw
explicitly discussed and recommended against filing a Tevis claim.
However, for purposes of our review, we assume — as did the trial
court — the truth of plaintiff's allegation.

 3 A-0177-15T4
seeking damages that she allegedly would have recovered had the

claim been brought. Plaintiff also sought damages for the "severe,

temporary and permanent physical and mental injuries requiring

medical and psychological care and treatment and will require such

care in [the] future." She produced no medical records or expert

testimony to support her claim of permanent injury, however.

 Although the attorneys did not discuss a potential Tevis

claim or file one on plaintiff's behalf, they were aware of the

incidents. Stripto referred to them in plaintiff's claim for

divorce based on extreme cruelty. The 2004 incident also prompted

the domestic violence complaint (although the prior history of

domestic violence added only the 2003 incident and did not allege

any physical injury from that prior event). Bachman, in turn,

relied on the FRO during the arbitration hearings in an attempt

to gain sole legal custody of the children.

 Both attorneys explained they did not discuss the possibility

of a Tevis claim with plaintiff because they did not believe the

incidents provided a viable claim for such relief. In particular,

they noted plaintiff did not suffer any documented long-term

physical or psychiatric injury from the events. Moreover,

plaintiff never received medical treatment or medication for any

resulting injuries, nor did she seek any psychological or

psychiatric treatment for emotional or verbal abuse by her husband.

 4 A-0177-15T4
As a result, they believed that the Tevis claim would be neither

successful nor cost-effective for plaintiff.

 In support of her malpractice claim, plaintiff relied on the

expert opinion of attorney Ronald Edelman. In his brief report,

Edelman opined that plaintiff had a "potential Tevis claim" and,

further, that defendants "had the obligation to advise her of her

Tevis rights" and "to protect her rights." The report did not

expressly address whether defendants breached their duty of care

by not filing such claims, nor did it discuss whether they would

have succeeded.

 The court granted in part and denied in part without prejudice

defendant's first motion for summary judgment, which was filed

before the end of discovery. In an oral decision in March 2015,

Judge Katie A. Gummer dismissed plaintiff's claim for damages tied

to alleged permanent physical or mental injury. Specifically, the

court noted, "it is undisputed that plaintiff did not suffer any

permanent physical injuries as a result of the purported physical

and verbal abuse inflicted upon her by her former husband." The

court concluded that plaintiff "neither factually nor legally"

established that she had suffered any "disability or ongoing

physical or mental injury" or that she was entitled to damages

flowing therefrom. Nonetheless, Judge Gummer concluded plaintiff

had a viable Tevis claim for damages arising out of the injury she

 5 A-0177-15T4
allegedly experienced after the three assaults. The court rejected

defendants' argument, which relied on Merenoff v. Merenoff, 76

N.J. 535 (1978), that the husband's actions and plaintiff's injury

were too trivial to be litigable.

 The court also concluded that because plaintiff's malpractice

action concerned "the soundness of decisions made by lawyers as

to what they should relay to their clients and what actions to

take in a matrimonial matter[,]" expert testimony would be required

to establish proximate causation. The court noted that plaintiff

had not alleged (at least at that point) that she would have filed

a Tevis claim if her attorneys had informed her of the potential

claim. The judge stated it was unclear whether Edelman's opinion

that the attorneys had failed to protect plaintiff's interests was

intended to convey a view on proximate causation. However, giving

plaintiff the benefit of the doubt, the court assumed it did,

subject to clarification in discovery.

 In his subsequent deposition, Edelman denied opining "as to

whether any actions of the lawyers proximately caused any damage

to" plaintiff. He stated his report focused on "whether or not

the attorney[s] fulfilled [their] obligation to [their] client,"

by failing "to advise the client of her Tevis rights." Edelman

stated he did not form an opinion as to the value of the Tevis

claim, whether it was negligent of the attorneys to conclude it

 6 A-0177-15T4
should not be filed, whether plaintiff would have pursued the

claim if she had been advised about it, or the impact of filing

the claim on other issues in the divorce.2

 Defendants submitted an expert report by attorney David

Wildstein, who stated he had extensive experience with Tevis

claims. He explained that, in general, Tevis claims are "a rarity"

in matrimonial matters. He noted that successful claims usually

require "medical or expert testimony and serious or substantial

injury." He asserted it was "doubtful" that plaintiff would have

succeeded if she had brought a claim. Wildstein stated, "Plaintiff

has failed to provide any evidence that she would have prevailed

in recovering damages." He endorsed Bachman's strategic decision

to utilize the FRO in connection with the custody dispute rather

than bring a Tevis claim.

 Wildstein also noted that the filing of a weak Tevis claim

would disadvantage the client's case in the matrimonial matter.

For example, "if a non-viable Tevis count was filed, it could be

viewed by a Judge or arbitrator as a legal tactic to obtain

leverage which could prejudice plaintiff's custody case." He also

2
 Edelman admitted a plausible reason not to pursue the Tevis claim
in this case was the fact that it would have opened the door for
plaintiff's husband to introduce evidence of plaintiff's alleged
extramarital affair, which had prompted his verbal and physical
response.

 7 A-0177-15T4
stated that "the Court frowns upon weak or non-viable Tevis claims

which may be used as leverage."

 In the meantime, plaintiff filed a certification stating that

she would have pursued a Tevis claim if she had been informed

about the possibility. She filed no further expert certifications

or other reports.

 Based on this expanded record, Judge Gummer granted

defendants' renewed motion for summary judgment. She concluded

that Edelman's deposition clarified he was not, in fact, offering

an opinion as to proximate cause. Reaffirming her prior holding

regarding the necessity of expert testimony on this subject for

plaintiff's prima facie case, the judge concluded that its omission

was fatal to plaintiff's cause of action. The court entered final

orders dismissing plaintiff's malpractice complaint with

prejudice. This appeal followed.

 II.

 "The necessity for, or propriety of, the admission of expert

testimony, and the competence of such testimony, are judgments

within the discretion of the trial court." State v. Zola, 112

N.J. 384, 414 (1988), cert. denied, 489 U.S. 1022, 109 S. Ct.

1146, 103 L. Ed. 2d 205 (1989). Accordingly, we must "generously

sustain" such determinations, so long as they are "supported by

credible evidence in the record." Estate of Hanges v. Metro.

 8 A-0177-15T4
Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010). Conversely, if

the trial court applies the wrong legal test when analyzing

admissibility, we apply de novo review. Konop v. Rosen, 425 N.J.

Super. 391, 401 (App. Div. 2012).

 The evidentiary question here is whether the trial court

appropriately required expert testimony to establish proximate

cause in plaintiff's legal malpractice claim. As a general matter,

expert testimony is barred "unless it relates to a subject matter

which is so distinctively related to some science, profession,

business or occupation as to be beyond the ken of the average

layman." Boland v. Dolan, 140 N.J. 174, 188 (1995) (internal

quotation marks and citation omitted). Although N.J.R.E. 702

speaks permissively — stating that "[i]f . . . specialized

knowledge will assist the trier of fact to understand the evidence

or to determine a fact in issue . . . [an expert witness] may

testify thereto" (emphasis added) — "New Jersey courts have

required expert testimony to explain complex matters that would

fall beyond the ken of the ordinary juror." State v. Fortin, 189

N.J. 579, 596 (2007).

 Legal malpractice actions often present such complex matters.

The elements of legal malpractice consist of: "(1) the existence

of an attorney-client relationship creating a duty of care by the

defendant attorney, (2) the breach of that duty by the defendant,

 9 A-0177-15T4
and (3) proximate causation of the damages claimed by the

plaintiff." Jerista v. Murray, 185 N.J. 175, 190-91 (2005)

(internal quotation marks and citation omitted). The client bears

the burden of proof. Sommers v. McKinney, 287 N.J. Super. 1, 10

(App. Div. 1996).

 The attorney's duty of care involves the "exercise [of] the

knowledge, skill and ability ordinarily possessed and exercised

by members of the legal profession similarly situated" and the

"exercise [of] a reasonable degree of care and prudence having

reference to the character of the service [an attorney] undertakes

to perform." Passante v. Yormark, 138 N.J. Super. 233, 238 (App.

Div. 1975), certif. denied, 70 N.J. 144 (1976). Whether an

attorney has fulfilled that duty is not ordinarily a matter within

the jury's common experience or knowledge. Brizak v. Needle, 239

N.J. Super. 415, 432 (App. Div.), certif. denied, 122 N.J. 164

(1990).

 Accordingly, we generally require expert testimony to

establish the first two elements of a malpractice claim. See

Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 78 (App. Div.

2007) (internal quotation marks and citation omitted); Restatement

(Third) of Law Governing Lawyers § 52, comment g (2000) ("[A]

plaintiff alleging professional negligence . . . ordinarily must

introduce expert testimony concerning the care reasonably required

 10 A-0177-15T4
in the circumstances of the case and the lawyer's failure to

exercise such care."). Only in the exceptional case, where the

breach of duty is basic or obvious, is an expert not required.

See Brizak, supra, 239 N.J. Super. at 431-32 (App. Div.) (no expert

needed when attorney "fail[ed] to conduct any investigation" into

client's alleged malpractice claim); see also Sommers, supra, 287

N.J. Super. at 10 ("In rare cases, expert testimony is not required

in a legal malpractice action where the duty of care to a client

is so basic that it may be determined by the court as a matter of

law.").

 The third element, proximate cause, requires a showing that

the malpractice was a "substantial factor in bringing about" an

injury. Conklin v. Hannoch Weisman, 145 N.J. 395, 419 (1996)

(internal quotation marks and citation omitted). Proof must be

based on "competent credible evidence," Sommers, supra, 287 N.J.

Super. at 10, and not "mere conjecture, surmise or suspicion,"

2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488

(App. Div. 1994) (internal quotation marks and citation omitted).

Here as well, our courts have required the use of expert testimony

except when "the causal relationship between the attorney's legal

malpractice and the client's loss is so obvious that the trier of

fact can resolve the issue as a matter of common knowledge." Id.

at 490; see also Sommers, supra, 287 N.J. Super. at 11 (accord);

 11 A-0177-15T4
4 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice, § 37:23,

at 1653 (2013 ed.) ("[U]nless the causal link is obvious or can

be established by other evidence, expert testimony may be essential

to prove [causation.]"); Allen v. Martin, 203 P.3d 546, 569 (Colo.

App. 2008) (noting "most jurisdictions have concluded that

causation in a legal malpractice action must be proved by expert

testimony, unless causation is within the jury's common

understanding" and collecting cases); Bozelko v. Papastavros, 147

A.3d 1023, 1030 (Conn. 2016) ("Because a determination of what

result should have occurred if the attorney had not been negligent

usually is beyond the field of ordinary knowledge and experience

possessed by a juror, expert testimony generally will be necessary

to provide the essential nexus between the attorney's error and

the plaintiff's damages.").

 Whether a particular causal chain is so obvious that expert

testimony is unnecessary is a fact-sensitive inquiry. We required

expert testimony when the alleged malpractice concerned the manner

in which a complex transaction had been structured. 2175 Lemoine

Ave. Corp., supra, 272 N.J. Super. at 487-90. Conversely, we

concluded that no expert testimony was required to demonstrate

that an attorney's misrepresentation about the strength of an

adversary's position had a substantial, negative impact on the

terms of his client's settlement. Sommers, supra, 287 N.J. Super.

 12 A-0177-15T4
at 8-9. Although we held that the plaintiff needed an expert to

challenge the quality of work done on her behalf, an expert was

not required "to announce that an attorney may not charge for work

that has not been performed . . . . [or] to establish the causal

connection between a charge for services not performed and lesser

proceeds to the plaintiff." Id. at 14.

 Here, the trial court found expert testimony was required to

establish proximate cause. We will not disturb that discretionary

conclusion. It bears repeating that the alleged malpractice here

pertains to a failure to notify plaintiff of a potential claim

under Tevis during the course of a matrimonial dispute.

 Accordingly, in order to meet the proximate cause prong of

her negligence claim, plaintiff had to demonstrate: (1) that she

would have brought the Tevis claim; (2) that the Tevis claim would

have produced an award greater than the cost of bringing it; and

(3) that such a net award would not have been offset by negative

repercussions in the broader matrimonial litigation. This is a

far more attenuated and intricate chain of causation than was

presented in Sommers. Even assuming plaintiff would have filed a

Tevis claim, the second and third elements implicate complex

questions of the law beyond the ken of average jurors.

 Plaintiff had to demonstrate she would have brought the Tevis

claim because she provided no evidence that defendants would have

 13 A-0177-15T4
acceded to a request, if she made one, to file such a claim on her

behalf. As noted above, the attorneys believed the claim would

have been ill-advised and counter-productive, assertions

corroborated by Bachman's expert. Edelman admittedly offered no

opinion on whether defendants' actions caused plaintiff

compensable harm.

 Plaintiff also had to demonstrate not only that the Tevis

claim would succeed, but it would produce a net positive award.

There is no evidence that an attorney would have pursued the claim

on a contingency basis (even assuming doing so would not run afoul

of Rule of Professional Conduct 1.5(d)(1)). Plaintiff thus may

have been required to incur fees and costs to pursue the claim.

To prove damage, plaintiff would need to establish that those fees

and costs did not exceed the value of a recovery for the tort.

 Furthermore, filing the claim could have complicated and

prolonged the underlying matrimonial litigation and increased

costs. Perhaps more significantly, it could have resulted in a

less favorable outcome on other issues of value and importance to

plaintiff in the divorce case. For example, as noted above, the

Tevis claim may have opened the door to evidence about plaintiff's

alleged extra-marital affair, which may have had an impact on

custody and financial issues pertinent to both alimony and

equitable distribution.

 14 A-0177-15T4
 Additionally, if plaintiff secured any recovery in a Tevis

action, the court would subsequently need to guard against a

double-recovery based on application of the same facts to the

calculation of equitable distribution. As we have warned:

 [P]laintiff's age, physical and emotional
 health and occupational limitations, if any,
 attributable to defendant's tortious conduct,
 may not again be considered in evaluating the
 equitable division of property issues.
 Likewise, defendant's actual liability in tort
 resulting in judgment must be considered in
 the court's decision respecting the division
 of property. The judgment debt owed plaintiff
 must also be considered in evaluating
 plaintiff's demand for alimony and
 particularly defendant's ability to pay
 alimony. There may not be a double recovery
 from defendant.

 [Giovine v. Giovine, 284 N.J. Super. 3, 29
 (App. Div. 1995) (authorizing marital tort
 claim for battered woman's syndrome).]

One treatise has observed that, although practitioners would be

well-advised to "re-examine the financial viability" of marital

tort claims after cases like Giovine, "most matrimonial

practitioners recognized that these types of claims were illusive,

spurious, inciteful [sic], rarely financially fruitful, and might,

in some cases . . . invite an undesired and financially

dysfunctional judicial response . . . ." 1 Gary N. Skoloff &

Laurence J. Cutler, New Jersey Family Law Practice § 1:67 (15th

ed. 2013) (emphasis added).

 15 A-0177-15T4
 Accordingly, we discern no abuse of discretion by the trial

court in its decision to require expert testimony on proximate

cause.

 Further, we reject plaintiff's argument that she could have

proceeded without expert testimony because she could have

established causation at trial in the "suit within a suit." Put

simply, this argument confuses a procedural trial framework with

plaintiff's prima facie burden.

 The "suit within a suit" approach allows a plaintiff to prove

proximate cause by "present[ing] the evidence that would have been

submitted at a trial had no malpractice occurred." Garcia v.

Kozlov, 179 N.J. 325, 358 (2004). Notably, the Court has

emphasized that this is only one of a number of procedures

available to the parties in a malpractice suit. Lieberman v.

Employers Ins. of Wausau, 84 N.J. 325, 343-44 (1980). Another

option is the "use of expert testimony as to what as a matter of

reasonable probability would have transpired at the original

trial." Ibid.

 But this procedural choice does not relieve plaintiff of her

substantive, prima facie burden as plaintiff seems to suggest.

Just because the parties choose to proceed by a "suit within a

suit" instead of by expert certifications does not mean that a

trial court cannot still require expert testimony as part of

 16 A-0177-15T4
plaintiff's proofs. See 4 Mallen, supra, § 37:23, at 1650 ("In

the trial-within-a-trial context, expert testimony that would have

been mandatory remains such."); cf. Cellucci v. Bronstein, 277

N.J. Super. 506, 520-24 (App. Div. 1994) (reviewing expert

testimony regarding negligence offered at a "suit within a suit"

proceeding), certif. denied, 139 N.J. 441 (1995).

 Plaintiff may not have needed an expert to establish the

merits of her Tevis claim — that is, that her husband assaulted

her, that she suffered pain, and that a monetary award is

appropriate to compensate her for that pain. But, as we noted,

it was beyond the ken of the average juror to determine whether

such a compensatory award would have been offset by the direct

costs of bringing it and the indirect costs upon her other claims

in the divorce case. Only expert testimony could remedy that gap

in understanding. The "suit within a suit" procedure would not

suffice.

 To the extent not already discussed, plaintiff's remaining

claims lack sufficient merit to warrant discussion in a written

opinion. R. 2:11-3(e)(1)(E).

 In sum, we discern no abuse of discretion in the court's

determination that plaintiff required expert testimony to meet her

prima facie showing of proximate cause. As plaintiff failed to

 17 A-0177-15T4
do so, we affirm the court's grant of summary judgment for

defendants.

 Affirmed.

 18 A-0177-15T4