924 A.2d 517

FAIRWAY DODGE, L.L.C., PLAINTIFF–APPELLANT, v. DECKER DODGE, INC., A NEW JERSEY CORPORATION, KATE FAIR MORGAN, TIMOTHY MORGAN, SUSAN DECKER, RONALD BIBBO AND DIANE KENNEDY, DEFENDANTS–RESPONDENTS, AND JOHN DOES (FICTITIOUSLY NAMED DEFENDANTS WHOSE TRUE IDENTITIES ARE PRESENTLY UNKNOWN) AND JANE DOES (FICTITIOUSLY NAMED DEFENDANTS WHOSE TRUE IDENTITIES ARE PRESENTLY UNKNOWN), DEFENDANTS.

Argued January 29, 2007—Decided June 19, 2007.

*Christopher C. Botta* argued the cause for appellant (*Botta & Carver*, attorneys; *Mr. Botta and Alexander H. Carver, III*, of counsel and on the brief).

*David W. Field* argued the cause for respondents (*Lowenstein Sandler*, attorneys).

PER CURIAM.

In this litigation between competing auto dealerships, the primary issues are whether the court erroneously dismissed plaintiff's claims alleging violations of the Computer Related Offenses

Act (Computer Act) against the co-owners of defendant car dealership, and whether the asserted evidentiary errors require a new trial on damages. The Appellate Division held that insufficient evidence existed to find that the co-owners violated the Computer Act and that the failure to admit testimony from witnesses who may have undermined the damages calculations of plaintiff's expert required a new trial on damages. We affirm.

## I.

We briefly relate the facts. In the early 1990s, Jane Fair, the owner of Fairway Dodge, decided to sell her family owned and operated car dealership to Ronald Sumner. Sumner sought the dealership in part because of its good reputation and client base. Jane's daughter, Kate Fair (Fair), and her husband, Timothy Morgan (Morgan), were longtime Fairway Dodge management employees and disapproved of the sale. Fair, Morgan, and another Fairway Dodge employee, Diane Kennedy (Kennedy), eventually resigned their positions at Fairway Dodge to work at a competitor dealership, Decker Dodge.

The evidence showed that on June 1, 1995, before leaving Fairway Dodge, but after Decker Dodge agreed to hire her, Fair cancelled Fairway Dodge's contract as a representative of the American Automotive Association (AAA). She claimed she cancelled the contract because it lacked sufficient profit. However, once employed at Decker Dodge, Fair enrolled her new employer in the AAA program, aiming at increasing business opportunities. Although Fairway Dodge re-enrolled in the AAA program two months later, the program was not as successful because of the competition from Decker Dodge.

Additionally, in the six months before Sumner's purchase, Fairway Dodge sold 144 Caravans. Caravans accounted for forty to fifty percent of Fairway Dodge's total sales and were the most popular model at the time. Despite that favorable history, Fair rejected Fairway Dodge's entire earned allocation of Dodge Caravans (forty-nine vans) after she learned that Fairway Dodge would

be sold. For the twelve months after Sumner's purchase, Fairway Dodge sold only 180 Caravans, an approximate loss of $201,960.

Decker Dodge was owned by Susan Decker Bibbo (Decker) and managed by her husband Ronald Bibbo (Bibbo). During the time that Sumner was negotiating to acquire Fairway Dodge, Decker Dodge hired Fair as general manager, Morgan as service manager, and Kennedy as sales manager. Once Fair began working at Decker Dodge, she advised Bibbo to replace the antiquated computer system and to purchase a new system similar to the one that was developed by Reynolds & Reynolds (Reynolds) for Fairway Dodge. Fair acted as the liaison between Reynolds and Decker Dodge during the installation of the new computer system.

On July 22, 1995, after Fair's departure from Fairway Dodge and Morgan's notice of his imminent departure from the dealership, Fair and Morgan entered Fairway Dodge's premises after business hours intending to make a backup tape of the computer system, but failed to do so. Trying again the next day, Morgan successfully copied onto a tape the customer and sales lists and the sales and service history of vehicles and automotive parts of Fairway Dodge.

Morgan delivered the tape to Reynolds to download the information to Decker Dodge's computer system. Reynolds, however, hesitated to do so without written authorization from Fairway Dodge. Fair, although employed by Decker Dodge at the time, sent Reynolds a letter on Fairway Dodge's letterhead stating that "[t]his letter gives Reynolds & Reynolds permission to go into Fairway Dodge['s] system to run specifications." Beneath her signature, Fair wrote "Sec[retary]/Treas[urer]," a title she still maintained, and "Gen[eral] Manager," a title she no longer held at Fairway Dodge.

Sumner acquired Fairway Dodge on August 2, 1995. He claimed that immediately after the purchase, the business began to plummet. Later, Sumner learned that the information in Fairway Dodge's computer system had been copied. He filed a complaint in the Chancery Division seeking injunctive relief and

damages against Decker Dodge, Fair, Morgan, and Reynolds. The parties entered into a consent order dated September 11, 1995, in which defendants agreed to delete the Fairway Dodge information from Decker Dodge's computer system and to refrain from soliciting Fairway Dodge's customers. In October 1995, however, Decker Dodge mailed a general solicitation letter informing the public of Fair's and Kennedy's move to Decker Dodge. Defendants claimed they purchased the list of names for the solicitation letter, but it is unclear how many of Fairway Dodge's clients received the letter. The court found that defendants violated the court order by mailing the solicitation letter and ordered Fair and Decker Dodge to pay counsel fees Fairway Dodge incurred to file the application.

Sumner filed an amended complaint adding Decker, Bibbo, and Kennedy as defendants. He alleged unlawful interference with prospective advantage, breach of the duty of loyalty, conspiracy, and racketeering. In a second amended complaint, Sumner also claimed violations of the Computer Act. The matter was transferred to the Law Division, where the court granted partial summary judgment in favor of plaintiff against Fair, Morgan, and Decker Dodge for violation of the Computer Act, but dismissed the racketeering claims. Sumner also dismissed the complaint against Reynolds through a settlement agreement. Ultimately, the parties agreed to a consent order dismissing the complaint without prejudice and permitting Fairway Dodge to re-file the complaint within one year.

Fairway Dodge then filed this action against Decker Dodge, Bibbo, Decker, Fair, Kennedy, and Morgan, alleging conspiracy to interfere with Fairway Dodge's prospective economic relations, breach of the duty of loyalty, misappropriation of property, and violation of the Computer Act. The matter was eventually tried before a jury. At trial, plaintiff's expert, Mark Koenig, a certified public accountant specializing in forensic accounting and valuation, reviewed the business records provided by both dealerships and other relevant evidence. Koenig also used a specific industry

calculation for goodwill, although not one that is generally accepted by accountants. He opined that Fairway Dodge suffered damages of $850,497 ($627,798 lost profits and $222,699 lost goodwill). Koenig estimated that total damages from defendant's actions amounted to $1,813,890.

Karen Frankel, another accountant, testified for defendants. She disagreed with Koenig's assumptions that Fairway Dodge's clients would have remained loyal, the assumed profit margins, and his goodwill evaluation. Defendants also presented a list of former Fairway Dodge clients who were prepared to testify that they purchased their Decker Dodge vehicle without any solicitation by defendants. However, the trial court did not permit those witnesses to testify for "lack of competency."

The jury returned a verdict in favor of plaintiff. The jury found that all defendants conspired to commit a wrong against plaintiff; all defendants interfered with plaintiff's economic relations; Fair, Kennedy, and Morgan breached their duty of loyalty to plaintiff; and Bibbo, Decker, and Kennedy violated the Computer Act. As noted, the trial court had previously granted summary judgment against Decker Dodge, Fair, and Morgan for violation of the Computer Act. The jury awarded plaintiff compensatory damages on the common law claims against the following defendants as follows: Decker Dodge $583,756; Bibbo $403,252; Decker $153,620; Fair $336,043; Kennedy $38,405; and Morgan $57,608. On the claims under the Computer Act, the jury assessed damages as follows: Decker Dodge $145,939; Fair $144,019; and Morgan $57,608. Thus, although liability under the Computer Act was assessed against Bibbo, Decker, and Kennedy, the jury did not impose any damages against them. The compensatory damages awarded to plaintiff totaled $1,920,250. The jury then deliberated again and awarded punitive damages to plaintiff and against the following defendants in the following amounts: Bibbo $75,000; Decker $25,000; Fair $20,000; Kennedy $5000; and Morgan $5000.

Defendants moved for judgment notwithstanding the verdict, a new trial, or remittitur. The trial court denied the motion and molded the verdict to enter joint and several liability against all defendants for the compensatory damages verdict. Subsequently, the court awarded plaintiff $525,628.26 in attorneys' fees, $16,429.82 for costs of investigation pursuant to the Computer Act, and $853,184.85 in prejudgment interest.

Defendants appealed and a stay was entered. In an unpublished opinion, the Appellate Division affirmed in part and reversed in part. Specifically, the panel affirmed the entry of partial summary judgment against Decker Dodge, Fair, and Morgan under the Computer Act. Because Fair and Morgan admitted to accessing Fairway Dodge's computer, the panel determined that such conduct constituted a "taking" under the Act and that the taking occurred without authorization. Further, the panel found that Decker Dodge was liable under a theory of respondeat superior. However, the tribunal vacated the judgment against Bibbo, Decker, and Kennedy, stating that:

> [Decker Dodge], Kennedy, Decker, and Bibbo argued that they could not be liable for violating the [Computer Act] as a matter of law because it applies only to "actors". We agree with respect to Decker, Bibbo and Kennedy, but disagree as to [Decker Dodge]. A plain reading of *N.J.S.A.* 2A:38A–3 indicates that the only parties liable pursuant to the [Computer Act] are those actors that actually access, alter, damage, take or destroy computer information. Moreover, even assuming that the [Computer Act] does allow for vicarious liability, Fairway has not proven that Decker, Bibbo or Kennedy conspired with Fair and Morgan to violate the [Computer Act].

The panel also agreed with defendants that the court erroneously precluded them from calling fact witnesses who would have testified that defendants did not solicit their business. The witness testimony was admissible to show the motivation of the former customers in choosing to do business with Decker Dodge rather than Fairway Dodge and could have influenced the jury in the assessment of damages. The panel also vacated the judgment for breach of the duty of loyalty against Bibbo, Decker, and Kennedy and for tortious interference with economic advantage against Bibbo, Decker, and Morgan. Noting that the compensato-

ry damages award may have affected the punitive damages award, the panel remanded for a new trial on damages. We subsequently granted Fairway Dodge's petition for certification. 188 *N.J.* 490, 909 *A.*2d 725 (2006).

## II.

Plaintiff contends that Bibbo and Decker are liable under the Computer Act for wrongfully taking and accessing computer data without authorization and that liability under the Computer Act should not be limited to those with hands-on involvement. Plaintiff also argues that the damages award should be reinstated because any alleged error in not permitting the former customers to testify was cured by other forms of evidence introduced at trial.

Defendants disagree and urge that we affirm the judgment. They argue that because Bibbo and Decker were completely unaware of Fair and Morgan's conduct, Bibbo and Decker cannot be liable as "actors" under the Computer Act. Further, defendants maintain that if the former customers had been permitted to testify, the jury might have found plaintiff's expert less credible and returned a smaller verdict.

## III.

### A.

*N.J.S.A.* 2A:38A–3 of the Computer Act provides that

A person or enterprise damaged in business or property as a result of any of the following actions may sue the *actor* therefor in the Superior Court and may recover compensatory and punitive damages and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation:

a. The *purposeful or knowing,* and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;

b. The *purposeful or knowing,* and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;

c. The *purposeful or knowing,* and unauthorized accessing or attempt to access any computer, computer system or computer network;

d. The *purposeful or knowing*, and unauthorized altering, accessing, tampering with, obtaining, intercepting, damaging or destroying of a financial instrument; or

e. The *purposeful or knowing* accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network. [ (Emphasis added).]

The Computer Act imposes liability against an "actor" whose "purposeful or knowing" conduct is proscribed by the statute. The Appellate Division concluded that the meaning of the word "actor" was crucial and declared that the "only parties liable pursuant to the [Computer Act] are those actors that actually access, alter, damage, take or destroy computer information."

 "When interpreting a statute, the Court's role is to effectuate the will of the Legislature." *Tlumac v. High Bridge Stone*, 187 *N.J.* 567, 573, 902 *A.*2d 222 (2006) (citation omitted). We first look to the words of the statute, and if the language is clear, we interpret the statute consistent with its plain meaning. *Lozano v. Frank De Luca Constr.*, 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004). "However, when the statutory language is ambiguous and a fair reading of the words permits more than one reasonable interpretation, then we may turn to extrinsic interpretive aids, including legislative history and established canons of construction, for assistance in discerning the Legislature's intent." *State v. Fleischman*, 189 *N.J.* 539, 546, 917 *A.*2d 722 (2007).

## B.

██ The Computer Act does not define the term "actor." Nor do we find any legislative history informing the meaning of that word. We are satisfied, however, that it is not necessary to define the word "actor" to decide this appeal. Each subsection of *N.J.S.A.* 2A:38A–3 is independent of the other and each subsection requires that the conduct by the actor be "purposeful or knowing." *See State v. Simon*, 161 *N.J.* 416, 464, 737 *A.*2d 1 (1999). The evidence presented failed to establish that either Bibbo or Decker acted purposefully or knowingly in any conduct that violated the Computer Act. The unchallenged testimony of Bibbo and Decker

established that they first learned of Fair's and Morgan's improper conduct of copying information from Fairway Dodge's computer only when the lawsuit was filed. There simply was no evidence presented that implicated Bibbo and Decker in the effort to obtain information from Fairway Dodge's computer. Consequently, plaintiff failed to establish that Bibbo and Decker purposefully or knowingly violated the Computer Act.

## IV.

■ Finally, we agree with the Appellate Division that the trial court should have permitted defendants to call fact witnesses who would have testified that "in the years 1995 to 1999, they did business with [Decker Dodge] but were not solicited by defendants." Although that testimony was not relevant for purposes of assessing liability, it was relevant on the issue of damages. The witnesses were being offered to demonstrate their motive for choosing to do business with Decker Dodge. The panel noted that without that testimony:

> the jury could have found in fixing the amount of damages, that all of the persons in the "match" list would have purchased a vehicle from Fairway [Dodge] instead of [Decker Dodge]. The excluded testimony would have contradicted such a scenario by showing that there were reasons, independent from the solicitation, why the witnesses chose to purchase from [Decker Dodge].

That testimony may have undercut Koenig's expert testimony and resulted in a lesser jury award. It was error to deny defendants the use of that evidence.

## V.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.