**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1096-17T1

ALAN MARCUS AND THE MARCUS
GROUP, INC.,

    Plaintiffs-Appellants,

v.

DENNIS MCNERNEY,

    Defendant-Respondent,

and

CATHY MCNERNEY,

    Defendants.

_____

Argued January 30, 2018 — Decided July 12, 2018

Before Judges Fisher and Sumners.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-8093-14.

Joseph B. Fiorenzo, argued the cause for
appellants (Sills Cummis & Gross, PC,
attorneys; Joseph B. Fiorenzo, of counsel and
on the brief; Stephen M. Klein, on the brief).

Stephen R. Katzman, argued the cause for
respondent (Methfessel & Werbel, attorneys;

Stephen R. Katzman, of counsel and on the brief).

PER CURIAM

Plaintiffs Alan Marcus and The Marcus Group, Inc. filed suit against defendants Dennis McNerney and Cathy McNerney (husband and wife) for comments they posted on the PolitickerNJ.com website (PolitickerNJ) that were allegedly defamatory, an invasion of privacy — false light, and in violation of the Computer Related Offenses Act (CROA), N.J.S.A. 2A:38A to -6. We granted plaintiffs leave to appeal the trial court's grant of partial summary judgment to defendants dismissing all CROA claims. We conclude that, as a matter of law, the postings do not fall within the protections of CROA, and, therefore, we affirm.

I

Marcus — active in New Jersey politics since the 1960's and having served in leadership positions in the Bergen County Republican Committee — is the Chief Executive Officer and sole owner of The Marcus Group, Inc., which offers lobbying, strategic counseling, advertising, public relations and crisis management services to private and public entities. In 2010, Marcus was an advisor to Kathleen Donovan, the Republican candidate for the

office of Bergen County Executive, who defeated McNerney,[1] the two-term incumbent. After the election, Marcus served as Chairman of Donovan's transition team. In the ensuing years, Marcus' role and influence in the county government came under scrutiny by the Bergen County Board of Chosen Freeholders and the media, as well as the United States Attorney's Office, which investigated a public relations contract awarded to The Marcus Group by Bergen County Community College.

Pertinent to this appeal, plaintiffs sued McNerney claiming that leading up to Donovan's successful 2014 re-election campaign, McNerney, in his name and using fictitious identities, posted scores of defamatory comments on PolitickerNJ accusing Marcus of fraud, blackmail, corruption, and exchanging "sex for contracts," to scandalize Marcus and to defeat Donovan. Contending PolitickerNJ required its invited users to agree not to post: "defamatory, abusive, threatening or harassing speech; personal attacks of any kind of any kind[;]. . . content that is untrue, inaccurate, deliberately, misleading, or trade libelous, . . . [or] creat[e] a misleading screen name that misrepresents the poster's identity in an identifiable fashion," plaintiffs asserted

---

[1] All references to "McNerney" are to Dennis since Cathy was dismissed as a party and is not involved in this appeal.

A-1096-17T1

that under the CROA they were entitled to damages. Relying upon N.J.S.A. 2A:38A-3(c), plaintiffs claimed they were financially damaged because McNerney's posts were a "purposeful or knowing, and unauthorized access[] or attempt to access any computer, computer system or computer network."

In granting partial summary judgment dismissing the CROA claims, Judge John D. O'Dwyer issued a written rider to his order stating that viewing the allegations in the light most favorable to plaintiffs, McNerney's postings on PolitickerNJ did "not constitute purposeful and knowing conduct as contemplated by CROA."[2] The judge explained the posts did not violate the CROA because they "did not purposefully and knowingly access the website's computer network in an unauthorized manner."

## II

When reviewing an order granting summary judgment, we apply "the same standard governing the trial court." Oyola v. Xing Lan Liu, 431 N.J. Super. 493, 497 (App. Div. 2013). A court should grant summary judgment when the record reveals "no genuine issue

[2] Judge O'Dwyer also ruled that Marcus was a public figure who must establish by clear and convincing evidence that any posting must be done with malice; that some of the alleged defamatory statements as barred by the one-year statute of limitations under N.J.S.A. 2A:14-3; that all claims against Cathy are dismissed because she had no involvement with the postings. We do not address these rulings because the leave to appeal was limited to the alleged violations of the CROA.

as to any material fact" and "the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  We accord no deference to the trial judge's legal conclusions.  Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citations omitted).  Guided by these standards, we are convinced that the judge properly interpreted the CROA in his dismissal of plaintiff's CROA claims.

The CROA provides:

> A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefor in the Superior Court and may recover compensatory and punitive damages and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation:
>
> a. The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;
>
> b. The purposeful or knowing, and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;
>
> c. The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;
>
> d. The purposeful or knowing, and unauthorized altering, accessing, tampering with, obtaining, intercepting, damaging or destroying of a financial instrument; or
>
> e. The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer,

computer program, computer software, computer equipment, computer system or computer network.

[N.J.S.A. 2A:38A-3]

Plaintiffs argued that McNerney knowingly posted comments on PolitickerNJ thereby engaging in an "unauthorized access" and "unauthorized altering" of the website's computers prohibited by the CROA.

To support their vision of the CROA, plaintiffs rely upon Fairway Dodge v. Decker Dodge, 191 N.J. 460, 464 (2007), where our Supreme Court held that the defendant was liable in using his employer's computer in an unauthorized manner to copy customer lists for a competitor. Plaintiffs argue that the Court's statutory interpretation of the "unauthorized" element of the CROA in Fairway Dodge, equates to McNerney's use of PolitickerNJ in a manner expressly prohibited by the website, thereby causing damage to a plaintiff. Thus, they contend that their CROA claims should not have been summarily dismissed.

We conclude that plaintiff's overly broad interpretation of the CROA distorts the statute's clear meaning and is therefore incorrect. Our rules of statutory construction are well known. "It is a basic rule of statutory construction to ascribe to plain language its ordinary meaning." Bridgewater-Raritan Educ. Ass'n v. Bd. of Educ. of Bridgewater-Raritan Sch. Dist., Somerset Cty.,

221 N.J. 349, 361 (2015) (citing D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20 (2007)).  It is a primary purpose of a court to "seek to effectuate the 'fundamental purpose for which the legislation was enacted.'"  Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (quoting N. J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972)).  Yet, "[w]hen all is said and done, the matter of statutory construction . . .  will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation."  Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 100 (1969).

Clearly, the CROA's plain language provides a civil remedy for a person or entity whose business or property is damaged by someone who knowingly gains, or attempts to gain, unauthorized access, tampering or destruction to the person's or entity's computer system.  There is no doubt that McNerney did not access, tamper, or destroy plaintiffs' computer system; his posts were on PolitickerNJ, which, based on the record before us, has not objected to them.  Accordingly, plaintiffs' reliance on Fairway Dodge is misplaced.  There, the Court concluded no CROA violation occurred where there was no evidence that two of the named defendants "acted purposefully or knowingly" in accessing

7

plaintiff's computer to obtain information.  <u>Fairway Dodge</u>, 191 N.J. at 469-70.  However, two other named defendants who admitted to accessing plaintiff's computer without authorization were liable under the CROA.  <u>Id.</u> at 464.  Thus, the CROA violations in <u>Fairway</u>, which involved the defendants' unauthorized access to the plaintiff's computer, is not the situation presented here.

McNerney, like others viewing PolitickerNJ, was invited to post comments on the website regarding his thoughts and opinions.  Even agreeing with plaintiffs — as Judge O'Dwyer did — that some of McNerney's posts violated PolitickerNJ's user requirements prohibiting comments that are defamatory, abusive, threatening, personal attacks, untrue, inaccurate, or misleading, the CROA does not apply to their contentions.  Contrary to plaintiffs' argument, PolitickerNJ's user guidelines do not define what is prohibited under the CROA, the statute's language does.  We thus agree with McNerney that under plaintiff's reading of the CROA, every breach of a social media outlet's user requirements could be used to invoke the CROA.  There is nothing in the statute's plain language that calls for such an inaccurate and distorted interpretation.  Accordingly, McNerney posts concerning Marcus on PolitickerNJ did not violate the CROA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1096-17T1